# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**PATRICK BURKE**

    **Plaintiff,**

**v.**                                                                           **No.**

**LEA COUNTY BOARD OF**
**COUNTY COMMISSIONERS,**
**and COREY HELTON**

    **Defendants.**

## PLAINTIFF'S COMPLAINT

Patrick Burke ("Plaintiff"), through undersigned counsel, complains as follows against the Lea County Board of County Commissioners (the "Board") and Corey Helton ("Helton").

## INTRODUCTION

1. This case arises from the extreme and outrageous actions of an immature, vindictive man who was elected sheriff but behaves like a tinpot dictator.

2. Plaintiff is an experienced, decorated career law enforcement professional who spent 7 years at the Lea County Sheriff's Office ("LCSO"). While he was there, he maintained a sterling record as a public servant. In August of 2021, however, he incurred Helton's wrath when he decided to leave LCSO for a job with the federal government. Ever since then, Helton has used defamatory statements, political clout, and outright extortion to exact revenge for that perceived slight.

3. Plaintiff—and everyone else in New Mexico—deserves better. Through this action, Plaintiff seeks to hold Helton and the Board accountable for their flagrant violations of his rights under the New Mexico and United States Constitutions.

## PARTIES

4. Plaintiff Patrick Burke resides in Gaines County, Texas.

1

5. Defendant Lea County Board of County Commissioners is the local governing entity for Lea County, New Mexico. Its subsidiaries include LCSO.

6. Defendant Corey Helton is the elected sheriff of Lea County, New Mexico. He resides in Lea County, New Mexico.

## JURISDICTION

7. This Court has jurisdiction because this suit is brought against Defendants under 42 USC § 1983.

8. Venue is proper as a substantial amount of the acts giving rise to this action occurred in New Mexico.

## ALLEGATIONS

9. From 2015 to 2021, Plaintiff was a deputy at LCSO and a certified law enforcement officer. While at LCSO, he led the department in arrests in multiple years, and received awards and commendations for his service to the department and the community. He also achieved numerous certifications, including as a driving instructor, negotiator, and field training officer. Plaintiff's reputation as a member of law enforcement was above reproach.

10. Throughout his time at LCSO, Plaintiff lived with his wife and children in Seminole, Texas. He commuted to Lea County for work.

11. In July of 2021, Plaintiff was offered a job with the federal government as a civilian military police supervisor stationed in Germany.

12. Plaintiff accepted the position, and immediately notified his supervisors that he had accepted the job offer and would be leaving LCSO in a few months.

13. Instead of responding to this news professionally—as a normal person would—Helton was furious. In an hour-long phone call, he yelled at Plaintiff and accused him of disloyalty.

14. On August 3rd, 2021, LCSO chief deputy Chan Kim ("Kim") showed up unannounced at Plaintiff's house in Seminole. Kim was dressed in full uniform, armed with his service weapon, and driving a department-issued vehicle, despite being outside his jurisdiction.

2

15. After Plaintiff opened the door, Kim began to scream at him in front of his children for his purported disloyalty to LCSO.

16. Kim closed distance multiple times during the tirade and placed his hand on his gun while yelling at Plaintiff.

17. On information and belief, Kim was dispatched to Plaintiff's home by Helton.

18. Immediately after Kim left, Plaintiff contacted Helton, who once again accused Plaintiff of disloyalty. Plaintiff, unwilling to put up with further abuse, decided to resign.

19. The next morning—August 4, 2021—Plaintiff emailed LCSO to announce that he was resigning, effective immediately. Plaintiff then drove to LCSO's headquarters to turn in his badge and gun.

20. As soon as he entered the building, Plaintiff was informed by the undersheriff, Michael Walker, that he was being suspended and would be terminated—even though Plaintiff had already resigned. Plaintiff was also notified that he was the target of an internal affairs investigation opened by Helton.

21. Later that month, Helton—or someone acting on his direction—petitioned the State of New Mexico to revoke Plaintiff's law enforcement officer certification. That request was, of course, denied because Plaintiff no longer worked at LCSO.

22. By September of 2021, Plaintiff had relocated to Germany and started his new job as a federal employee.

23. In November of 2021, Plaintiff was called into his supervisor's office and questioned about his time at LCSO. Plaintiff's supervisor had been told that Plaintiff had lied about being a certified police officer, and that LCSO had terminated Plaintiff.

24. Plaintiff stated that everything on his resume was accurate, that he was a certified police officer and had been for years, and that he had resigned from LCSO. However, Plaintiff's supervisor was not convinced, and Plaintiff was eventually terminated from his position with the federal government.

25. On information and belief, Helton or someone acting on Helton's direction provided the false information to Plaintiff's employer so that Plaintiff would be fired.

26. In March of 2022, Plaintiff moved his family back to Seminole, and started to search for another job in law enforcement.

27. Plaintiff applied for a position at the Lovington Police Department ("LPD"). However, his application was rejected because of malicious actions taken by Helton.

28. The Board had approved a resolution to donate four surplus Ford Interceptors to LPD. But when Helton learned that LPD intended to hire Plaintiff, Helton notified LPD that he would not provide the vehicles if Plaintiff was hired. As a result, LPD decided not to hire Plaintiff.

29. Plaintiff also applied for a job at the Hobbs Police Department. However, his application was rejected when Helton notified HPD's brass that there would be negative consequences if they hired Plaintiff.

30. Unable to find a job at a police agency, Plaintiff attempted to find work in the Lea County oil fields. Once again, though, Helton intervened to prevent Plaintiff from finding employment.

31. Eventually, after a year of unemployment caused by Helton, Plaintiff found a job at the Carlsbad Police Department ("CPD") in Eddy County, New Mexico. CPD's police chief decided to hire Plaintiff despite attempts by Helton to dissuade him from doing so.

32. In October of 2023, while shopping at a Home Depot in Hobbs, New Mexico with his wife, Plaintiff was confronted by Helton.

33. Helton yelled and cursed at Plaintiff and told him he was not supposed to be in Lea County. Helton also lifted his vest and repeatedly tapped his badge, which Plaintiff understood from his experience with Helton as a threat of arrest.

34. Because of the incident at the Home Depot, Plaintiff fears that he will be wrongfully arrested whenever he enters Lea County.

35. Plaintiff must drive through Lea County to get to Carlsbad for work.

4

36. As a result of Helton's improper and unlawful actions, Plaintiff has suffered and continues to suffer damages including lost income and emotional distress.

## FIRST CAUSE OF ACTION
### Violation of the New Mexico Civil Rights Act.
### NMSA 1978, § 41-4A-3
### Against the Board

37. Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

38. The New Mexico Constitution recognizes certain rights as fundamental, among them the right to liberty, to seek and obtain happiness, due process, and freedom from unreasonable searches and seizure.

39. The Board has deprived Plaintiff of rights, privileges, or immunities secured by the constitution of New Mexico by, among other things, wrongfully and maliciously preventing him from obtaining employment, assaulting him, and using the threat of wrongful arrest to ban him from Lea County.

40. Helton and Kim have acted and are acting on behalf of, under color of, or within the course and scope of the Board's authority.

41. The deprivation of Plaintiff's rights proximately caused him to suffer damages, including emotional distress and loss of income.

42. Plaintiff is also entitled to a permanent injunction preventing the Board from committing further violations of rights afforded him by the New Mexico Constitution.

## SECOND CAUSE OF ACTION
### New Mexico Tort Claims Act
### NMSA 1978, § 41-4-1 et seq.
### Against Helton

43. Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

44. Helton is a "law enforcement officer" as that term is used in NMSA 1978, § 41-4-12.

5

45. Helton has defamed and slandered Plaintiff, and deprived him of rights, privileges or immunities secured by the constitution and laws of New Mexico.

46. These torts were committed by Helton while acting within the scope of his duties.

47. As a proximate result of Helton's actions, Plaintiff suffered injuries including loss of income and emotional distress.

### THIRD CAUSE OF ACTION
### Violation of the Right to Travel
### 42 U.S.C. § 1983
### Against Helton in his individual capacity

48. Plaintiff incorporates all allegations in this complaint as if fully set forth in this paragraph.

49. The United States Constitution protects the right of a citizen of one State to enter and to leave another State, and the right to be treated as a welcome visitor rather than as an unfriendly alien.

50. By causing the Plaintiff to believe he will be arrested without probable cause if he is found within Lea County, Helton has violated and is violating Plaintiff's fundamental right to interstate and intrastate travel.

51. The deprivation of Plaintiff's rights has proximately caused him to suffer damages, including emotional distress.

52. Plaintiff is further entitled to a permanent injunction preventing Helton from committing further violations of rights afforded Plaintiff by the United States Constitution.

53. Helton acted with evil intent or was reckless or callously indifferent to Plaintiff's federally protected rights, such that punitive damages are warranted.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Board and Helton as follows:

1. A judgment requiring the Board and Helton to pay damages as required by law, as well as reasonable attorney's fees, expenses, and costs of suit.

2. Injunctive relief against Defendants;

3. Such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

          **WALDO GUBERNICK**
          **LAW ADVOCATES LLP**

By: _____
Benjamin Gubernick
WALDO GUBERNICK
LAW ADVOCATES LLP
Benjamin Gubernick (SBN 145006)
E-mail: ben@wglawllp.com
Telephone (346) 277-0287
717 Texas St. Suite 1200
Houston, TX 77002

7