IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ZANE BROWN,

    **Plaintiff,**                No. 2:23-CV-00355-DHU-GJF

v.

**LEA COUNTY BOARD OF
COUNTY COMMISSIONERS,
COREY HELTON, and
MICHAEL WALKER,**

    **Defendants.**

<u>DECLARATION OF JEREMY GRADY</u>

1.    I am over the age of eighteen and am competent to testify as to the matters set forth herein.

2.    I swear under penalty of perjury and the laws of the State of New Mexico that the matters set forth in this Declaration are true and accurate as based on my personal knowledge.

3.    I am a certified law enforcement officer in the State of New Mexico and a chief deputy with the Lea County Sheriff's Office ("LCSO").

4.    I was Plaintiff Zane Brown's direct supervisor as a sergeant with the LCSO Criminal Investigations Division ("CID") beginning in 2020 through Plaintiff's subsequent resignation from LCSO.

5.    During my time as sergeant, I investigated two internal complaints against Mr. Brown from Diana Jurado (formerly Garcia) in which she alleged Brown was bullying her.

6.    The enclosed documents are true and accurate copies of documents I received or drafted or recordings as noted therein. *See* Attach. 1, BN 30-32 Formal Complaint; Attach. 2, BN

Page 1 of 2

**EXHIBIT 1**

Doc ID: bde9ff66a4e4975805e562a0338d06e4910c406c

5 Jurado Interview; Attach. 3, BN 7, Plaintiff Interview; Attach. 4, BN 12-29 Investigative Report; Attach. 5, BN 1 Martinez Interview; Attach. 6, BN 34-35 Estrada Letter; Attach. 7, Brown BN 769 Plaintiff Grady Recording; Attach. 8, BN 650-651 Verbal Reprimand.

7.    I verbally reprimanded Mr. Brown as a result of my investigations into Investigator Jurado's first and second complaints against Brown.

8.    After Mr. Brown left LCSO, I reviewed cases he was assigned to investigate and found he had not completed required supplemental case reports in five cases for incidents that happened in 2022 for case numbers 22S000401, 22S005379, 22S011721, and 22S012270; seven cases with incidents in 2021 under case numbers 21S026495, 21S031730, 21S010183, 21S024316, 21S014447, 21S030372, and 21S030029; and one case from an incident in 2019 under case number 19S025820.

9.    Plaintiff should have submitted supplemental reports for these cases within 10 days after obtaining additional evidence unless authorized by a sergeant to complete a supplemental report at a later date.

FURTHER DECLARANT SAYETH NAUGHT

_____
Jeremy Grady, Declarant

04 / 02 / 2026
_____
Date:

Page 2 of 2

Doc ID: bde9ff66a4e4975805e562a0338d06e4910c406c



**LEA COUNTY SHERIFF'S OFFICE**

Corey Helton  •  Sheriff

1417 S. Commercial
Lovington, NM 88260
Phone: 575-396-3611
Fax: 575-396-6242

Date: January 7, 2022

To: Chain of Command

From: Investigator Diana Garcia

Reference: Formal Complaint

On Friday, September 17, 2021 I, Investigator Garcia contacted Sergeant Grady via telephone and informed him that I wanted to leave the Criminal Investigations Division. I advised Sergeant Grady that I wanted to demote back into a patrolmen position. Sergeant Grady inquired my reasons for wanting to leave and asked if it was because of Investigator Brown. I informed Sergeant Grady that he was correct however, I did not give him further details on the matter. Sergeant Grady stated that he would be speaking with Chief Martinez and that he would try and get the issues resolved.

On September 21, 2021 Sergeant Grady advised he had spoken to Chief Martinez and informed me that both he and Chief Martinez wanted to have a meeting with me regarding my decision. During the meeting both Sergeant Grady and Chief Martinez inquired details regarding the issues I was having in the division. I informed them that I loved being an Investigator and that I had no issues with the work itself. I stated that although I love all aspects of my job it had become difficult for me to stay focused on the "job" due to all the "extra stuff" going on around me. Chief Martinez inquired what I meant when I stated, "the extra stuff." I advised him that it had become very difficult, especially on scene to work with Investigator Brown due to his level of maturity and professionalism. I advised that in the past, I had spoken to Investigator Brown and addressed some issues that I had with his comments. I informed that I had even asked Investigator Sandoval to be a witness when I spoke to Investigator Brown regarding the comments he had made around the office or on scenes. Both Sergeant Grady and Chief Martinez asked me if I would consider staying in the division if the issues with Investigator Brown were resolved, I advised them I would. I informed them that I wanted to be more professional in the workplace and that I had made several changes within myself to be more professional with my coworkers both at the office and on scenes. I advised that some of the changes I had made included distancing myself (on a personal level) from Investigator Brown. I informed them that I didn't dislike Investigator Brown, but I wanted to maintain a more professional relationship with him. It should be noted that I did not give details for my reasoning as I did not believe it was necessary. I added that I believed Investigator Brown had many good qualities and that I had no issues with him other than the ones mentioned previously. Sergeant Grady and Chief Martinez advised they would be speaking to Investigator Brown and that they would make efforts to get the issues resolved.

On Monday, January 3, 2022 I was informed via email that our office was working a homicide in Lovington. The email was sent out at 1106 and was sent out by Investigator Brown. In the email, Investigator Brown stated, "we are currently working a homicide... please get with myself or Investigator Sandoval." After reading the email, I immediately reviewed my work phone and noticed that I did not

**File No. 1273-004**          **ATTACHMENT 1**          **MS_000030**



## LEA COUNTY SHERIFF'S OFFICE

Corey Helton • Sheriff

1417 S. Commercial
Lovington, NM 88260
Phone: 575-396-3611
Fax: 575-396-6242

have any missed calls and the only text messages sent out on the division group text were 4 photographs. The photographs were sent to the group text by Investigator Brown at 0818 that day. I reviewed my personal phone to make sure I did not have any missed calls or text messages from Dispatch or Investigator Sandoval, as she was the acting Supervisor at the time. I did not have any missed calls or text messages regarding a homicide or callout.

On Tuesday, January 4, 2022 I arrived at the office and turned on my computer to get ready for the day. I left my office door open, and I could hear voices coming from the hallway. I heard Sheriff Helton ask Investigator Brown questions regarding the homicide. I then heard Investigator Brown state that he, Investigator Sandoval, and Investigator Ibarra were working the homicide. I heard Sheriff Helton ask, "What about Diana?" to which Investigator Brown stated, "she's doing her own thing." Sheriff Helton replied "doing her own thing? What does that mean?" Investigator Brown then replied, "you know her thing, her sex crime thing." After hearing the comments, I exited my office and observed Investigator Sandoval standing by Investigator Brown and Sheriff Helton. I turned to the Sheriff and advised him that the statement was untrue and that I was not included in the group text regarding the homicide investigation. I informed the Sheriff that I did not receive a call out regarding the homicide. After speaking with the Sheriff, I asked Investigator Sandoval if she was the acting supervisor, she advised she was. I then requested to speak with her in my office. I inquired the reason why I was the only Investigator not called to respond and assist with the homicide. Investigator Sandoval gave several different stories as to why I was the only Investigator that was not called to assist. Initially, Investigator Sandoval stated she didn't think it was a homicide. She then stated there was not "much of a scene to process other than a dead body and tumbleweeds." Investigator Sandoval then stated she was "lost" and couldn't communicate with Chief Martinez. Then she stated "well you know how hard it is to work with him" it should be noted Investigator Sandoval was referring to Investigator Brown. Investigator Sandoval added that in the past she felt I had been called out for no reason and she felt bad due to "you having to drop off your kids and finding childcare." I informed Investigator Sandoval that I did not recall that ever being an issue for me however, I did recall her commenting that to me. I informed her that I would have responded to the scene with no problem if called to assist as I always have in the past. The last explanation I was given by Investigator Sandoval was that she "did not want to call me out due to them not needing my help on scene." I advised Investigator Sandoval that I trusted her judgment and if I was not needed on scene, I understood not getting a call. I explained to her that what I did have an issue with was her and Investigator Brown's integrity and truthfulness as to why I was not on scene or involved in the homicide investigation. I inquired if personal issues were the reason why I was not called to the scene, she stated they were not. I informed Investigator Sandoval that it was not my intention to hurt her or Investigator Brown by choosing to only have a professional relationship with them but that they could always count on me for anything regarding work. I asked Investigator Sandoval what she told Chief Martinez when he asked why I was not helping with the homicide investigation, she advised that she told Chief Martinez that my assistance was not needed. I told Investigator Sandoval that I would be speaking with Chief Martinez to confirm that he was told the truth to its entirety. It should be noted that

**File No. 1273-004**

**MS_000031**



**LEA COUNTY SHERIFF'S OFFICE**

Corey Helton  •  Sheriff

1417 S. Commercial
Lovington, NM 88260
Phone: 575-396-3611
Fax: 575-396-6242

my office door was open when I spoke with Investigator Sandoval and that the conversation was done in a respectful and professional manner.

After speaking with Investigator Sandoval, I contacted Chief Martinez and requested to speak with him. I informed Chief Martinez of what had occurred and my concerns with Investigator Sandoval and Investigator Brown's integrity regarding this manner. Chief Martinez informed me that due to Sergeant Grady being out all week he did respond to the scene and inquired why I was not present. Chief Martinez stated that he was advised by Investigator Brown that "I was with my kids." I informed Chief Martinez that Investigator Brown was being untruthful with him as he was with the Sheriff. Chief Martinez did confirm that Investigator Sandoval had indeed informed him that she did not believe I needed to be called to assist in the investigation.

In conclusion, I felt it is necessary to begin documentation regarding the issues of lack of professionalism and integrity with Investigator Brown. I would like it to be noted that I have absolutely no issue with not being called to assist on a scene or included in division group texts by Investigator Brown. However, I will not allow Investigator Brown to implicate me with lies and make it seem as though I refuse to do my job. Investigator Brown's actions in this matter have shown that he is unable to be professional and set aside his personal feelings when it comes to working with me.

Respectfully,

Investigator D. Garcia

DATE: February 14, 2022

TO: Sheriff Corey Helton
Undersheriff Michael Walker
Chief Deputy Jon Martinez

FR: Sergeant J. W. Grady

RE: Involved Employee and Administrative Investigation or Citizen Complaint Number

**BASIS FOR INVESTIGATION**

On Friday, January 7, 2022, at 1435 hours I received a Formal Complaint from Investigator D. Garcia via email. At the time I received the complaint I was on vacation and attempted to forward the complaint to Chief Deputy J. Martinez. Due to the file size, the email did not send. On Monday, January 10, 2022, the complaint was forwarded. I was instructed by Chief Deputy J. Martinez to conduct the investigation.

In the Formal Complaint, Investigator Garcia gave a brief history of her allegations. The complaint displayed a prior incident that was alleged Friday, September 17, 2021, when Investigator Garcia requested to return to the Patrol Division. A meeting took place on Tuesday, September 21, 2021, between Investigator Garcia, Chief Deputy Martinez, and I. The meeting consisted of recent events of how Investigator Garcia believed she was being treated wrongly by Investigator Z. Brown. As a result of that incident, Investigator Brown received a Verbal Counseling session informing him of the Lea County Harassment Policy with instructions to stop any negative communication with Investigator Garcia. Investigator Garcia rescinded her request and remained in the Criminal Investigations Division. The complaint further stated on Monday, January 3, 2022, Investigator Garcia was not officially requested to respond for a homicide investigation and only learned of the incident when she reviewed an email that was addressed to the Lea County Sheriff's Office and text messages on the CID Group chat. Investigator Garcia stated she assumed she was not needed and did not respond due to not being contacted.

Investigator Garcia advised the following day, Tuesday, January 4, 2022, that she was in her office and heard Sheriff C. Helton talking in the hallway near her office. Investigator Garcia said Sheriff Helton asked Investigator Brown questions regarding the homicide investigation. Investigator Garcia said she heard Investigator Brown state that he, Investigator Sandoval, and Investigator Ibarra were working the homicide. Investigator Garcia advised she then heard Sheriff Helton ask Investigator Brown "what about Diana" and Investigator Brown responded, "She's doing her own thing". Sheriff Helton asked, "Doing her own thing, what does that

mean?" and Investigator Brown responded, "You know her thing, the sex crime thing". Investigator Garcia stated she immediately exited her office and told Sheriff Helton that the statement was "untrue" and that she was not included in the group text regarding the investigation. Investigator Garcia requested to speak to Investigator Sandoval because she was the acting supervisor.

Investigator Garcia stated she inquired the reason why she was the only Investigator not requested to respond for investigation. Investigator Garcia said Investigator Sandoval told her several different reasons to include "she didn't think it was a homicide, not much of a scene to process other than a dead body and tumbleweeds, she was lost and couldn't communicate with Chief Deputy Martinez, Investigator Brown is hard to work with, she felt bad that Investigator Garcia had to find childcare to respond, and that she (Investigator Garcia) wasn't needed on scene". Investigator Garcia asked Investigator Sandoval if she was not called due to personal issues and was told no. Investigator Garcia explained to Investigator Sandoval that she trusted her judgement of not being needed but had an issue with Investigator Brown's integrity and truthfulness as to why she was not there. Investigator Garcia continued and asked Investigator Sandoval what was told to Chief Deputy Martinez. Investigator Garcia said Investigator Sandoval explained to Chief Martinez that her assistance was not needed. Investigator Garcia told Investigator Sandoval that she would speak to Chief Deputy Martinez to confirm he was given the truth.

The complaint continued with the conversation between Chief Deputy Martinez and Investigator Garcia. Investigator Garcia stated she informed Chief Deputy Martinez of what occurred and her concerns with Investigator Sandoval and Investigator Brown's integrity. Investigator Garcia said she learned Chief Deputy Martinez asked Investigator Brown why Investigator Garcia was not on scene and was told Investigator Garcia "was with her kids". Investigator Garcia said she told Chief Deputy Martinez Investigator Brown as being "untruthful with him as he was the Sheriff". Investigator Garcia did confirm Investigator Sandoval's statement with Chief Deputy Martinez.

Investigator Garcia concluded her complaint that she feels the incidents needed to be documented in reference to Investigator Brown's integrity and that she feels his actions show he is unable to treat her in a professional manner.

I later received a written memo from Sergeant S. Estrada with new information in this case. Due to the new information, I authored a Time Extension letter and gave it to Investigator Garcia explaining the reasons.

**RECORDED INTERVIEWS**

**Criminal Investigator Diana Garcia**:

File No. 1273-004          ATTACHMENT 4          MS_000012

File No. 1273-004                              MS_000013

---

Sergeant Estrada advised she had heard several conversations of incidents that involved Investigator Brown speaking poorly of Investigator Garcia. Sergeant Estrada stated she was told Investigator Brown made comments to different Deputies about Investigator Garcia leaving CID, leaving the Lea County Sheriff's Office, openings in CID, and that he didn't get along with Investigator Garcia. Sergeant Estrada advised she felt as though it wasn't right, and Investigator Brown shouldn't be talking that way about Investigator Garcia. Sergeant Estrada advised she was told the information by Deputy Vivian Martinez and Deputy Clara Marquez. Chief Deputy Martinez requested Sergeant Estrada to type a memo in reference to her statement. I received the memo later that day. The Memo was consistent with our conversation.

**EMPLOYEE COMPLAINT HISTORY**

Verbal Counseling 10/04/2021
Verbal Counseling 07/02/2021

**CREDIBILITY DETERMINATIONS**

None

**OTHER MISCONDUCT IDENTIFIED DURING INVESTIGATION**

None

**FINDINGS**

Sergeant S. Estrada's memo indicated she was informed of different conversations from Deputy Marquez and Deputy Martinez that she deemed inappropriate by Investigator Brown. Deputy C. Marquez could not remember full details of the conversation that transpired, only that the conversation existed, and she did not hear Investigator Brown say anything negative. Deputy V. Martinez indicated she started the conversation by asking about the rumor and Investigator Brown gave his opinion. Deputy Martinez stated Investigator Brown was answering the question she asked and "didn't go on about it". Sheriff Helton stated he did not take Investigator Brown's statement in a "negative way" and felt he was answering his questions truthfully. Chief Deputy Martinez stated he did not believe Investigator Brown was attempting to lie to him, cover up for Investigator Garcia, or try to demean her in any way during their conversation. Investigator Sandoval stated she has not heard Investigator Brown intentionally be untruthful or demeaning towards Investigator Garcia. Investigator Sandoval stated Investigator Brown tries to joke and be funny and sometimes people do not take it the right way. Investigator Sandoval was not fully aware of the conversation between Sheriff Helton and Investigator Brown in its entirety but accounted for what Investigator Garcia described.

Investigator Brown admitted to saying he hoped Investigator Garcia would leave the division to several people by stating "I hope she fucking leaves" and that he "talked shit" when he was angry. When asked if he thought his answers caused conflict, Investigator Brown said, "Yes, but I don't care, but that's how I feel". Investigator Brown also indicated, since he received his verbal counseling in September 2021, he has intentionally not interacted with Investigator Garcia unless it was on a professional level for work.

**NOTED VIOLATIONS**

After completing this review, Investigator Brown admitted to making statements that would explicitly or implicitly ridicule, mock, deride, or belittle any person for any reason, including their race, color, gender, age, religion, ancestry, sexual orientation, gender identity, marital status, national origin, physical/mental handicap, or veteran status as listed in ADM 5-01-1.

Investigator Brown also admitted to using language that goes against ADM 1-04-5(C) Personnel shall not criticize or ridicule the Sheriff's Office, its policies, or other personnel in a manner which is defamatory; obscene; unlawful; undermines the effectiveness of the Sheriff's Office; interferes with the maintenance of discipline; misrepresents facts of an event or is made with a disregard for the truth.

I did not develop any evidence to prove Investigator Brown was intentionally untruthful in his statements.

Respectfully,

_____
Sergeant J.W. Grady 800

File No. 1273-004          MS_000028

File No. 1273-004          MS_000029



**LEA COUNTY SHERIFF'S OFFICE**

1417 S. Commercial
Lovington, NM 88260
Phone: 575-396-3611
Fax: 575-396-6242

January 12, 2022

**TO:**   Sgt. Jeremy Grady

**FR:**   Sgt. Sonia Estrada

**RE:**   Investigator Brown

On Sunday, January 9th, 2022, I spoke with Vivian Martinez over the phone. She called me to ask if I had any old pictures of Paul Campos. While on the phone we spoke about some personal and work issues.

One of the conversations was about Investigator Zane Brown. She told me she heard there was a position opening up in Investigations. I asked her how she heard that. She advised Zane had told her Investigator Garcia had put in her letter to go back to patrol. I told her I had not heard anything about Investigator Garcia leaving Investigations. Vivian said Zane informed her Garcia had submitted a letter, then she changed her mind and pulled it. Then she recently submitted another letter to go back to Patrol. Zane also told her that himself and Sandoval no longer get along with Garcia. I let Vivian know that was the first I heard of that. It appeared to me as if Zane was trying to cause some issues with Garcia, and I told Vivian I didn't believe it. I asked her why Zane would tell her that, and she said Zane goes and talks to her regularly.

I had also spoken to Deputy Marquez a few weeks ago about Investigator Brown. I don't remember exactly what was said, I just recall her saying he had said



**LEA COUNTY SHERIFF'S OFFICE**

1417 S. Commercial
Lovington, NM 88260
Phone: 575-396-3611
Fax: 575-396-6242

something about Investigator Garcia. Something uncalled for. Deputy Marquez will be able to tell you exactly what was said to her.

I am writing this letter in hopes that the issue is resolved peacefully and professionally. I do not think it's appropriate for Investigator Brown to be spreading rumors about Investigator Garcia.

Thank You,

Sgt. Sonia Estrada



## LEA COUNTY SHERIFF'S OFFICE

Corey Helton • Sheriff

1417 S. Commercial
Lovington, NM 88260
Phone: 575-396-3611
Fax: 575-396-6242

Date: July 2, 2021

To: Criminal Investigator Zane Brown

From: Sergeant J. W. Grady

Reference: Verbal Counseling

On Tuesday, June 8, 2021 at 1300 hours the Criminal Investigation Division conducted a CID Meeting in which you were present. During this meeting we discussed daily activity reports, training, in-services, FARO scanning, suspicious deaths, oilfield taskforce class, and upcoming vacation.

I explained in the meeting, that due to the Lea County Sheriff's Office not having a formal policy, CID will have the practice of FARO scanning all suspicious deaths, suicides, shootings when someone is injured, and any other scene that is questionable. We also discussed every death investigation will be processed as a homicide if there is any question to the manner of death by a single Investigator.

From Thursday, June 10, 2021 until Tuesday, June 16, 2021 you were the Acting Supervisor for the Criminal Investigations Division. On Monday, June 14, 2021 at 2233 hours you and Criminal Investigator D. Ibarra responded to 8212 N. Valdez St. Hobbs in reference to a suicide. During your investigation, the decedent was located in a small bathroom with a single gunshot wound to the head. The suspected firearm was located with the decedent, and additional evidence indicated the body was moved prior to your arrival. In addition, the female witness was observed to have evidence on her person.

Criminal Investigator Ibarra instructed Deputies to detain and separate the witness to secure the evidence on her person while he was travelling to the scene. The witness was separated by Deputies but left unsecured without supervision which allowed the witness to remove the evidence. While on scene you made the decision not to FARO scan the scene due to the size of the bathroom even though the practice of utilizing the FARO Scanner was discussed the six days prior to this investigation.

Criminal Investigator Z. Brown, as the Acting Supervisor for the Criminal Investigations Division, you have the overall operational authority and control of the scene. It is your duty to ensure all investigative practices are being completed correctly. If procedures are not being completed, you are to address the issues with the Patrol Supervisor on scene or myself. As stated in the meeting you will FARO scan all suspicious deaths, suicides, shootings when someone is injured, and any other scene that is questionable and ensure the crime scene is completely processed in a systematic order. The purpose of these procedures is to maintain the integrity of the investigation, give law

**File No. 1273-004**        **ATTACHMENT 8**        **MS_000650**