IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ZANE BROWN,

      Plaintiff,                      No. 2:23-CV-00355-DHU-GJF

v.

LEA COUNTY BOARD OF
COUNTY COMMISSIONERS,
COREY HELTON, and
MICHAEL WALKER,

      Defendants.

**PLAINTIFF'S RESPONSES TO COUNTY DEFENDANTS' FIRST
INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR
ADMISSION TO PLAINTIFF ZANE BROWN**

Plaintiff responds as follows to Defendants' first set of discovery requests as follows:

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Describe all communications with Lea County personnel concerning the initial background check you conducted for Ahmaad White in September 2021 while you were employed with the Lea County Sheriff's Office. In your description, identify the date, method of communication, names of the Lea County employees involved in the communication(s), and who said what in each communication to the best of your recollection.

**ANSWER:**

Plaintiff talked to Travis Hobbs, in-person, upon receiving the assignment from Mr. Hobbs. Plaintiff expressed concern that he being tasked with conducting Mr. White's background check, as he and Mr. White were friends. Mr. Hobbs responded "that's what they want," referring to LCSO administration. Plaintiff does not remember the exact date he was assigned the background check.

**EXHIBIT 10**

**INTERROGATORY NO. 4:** In greater detail that provided in Paragraph 14 of Plaintiff's Corrected Third Amended Complaint, describe how you came to believe Ahmaad White's employment application had been treated differently than others and why you were concerned about how the application was handled.

**ANSWER:**

The process Plaintiff was told to use appeared designed to disqualify Mr. White. That made no sense to Plaintiff, as Mr. White was beyond qualified to work at LCSO. Plaintiff had conducted other background checks for less qualified individuals, and LCSO had not demanded this level of scrutiny.

**INTERROGATORY NO. 5:** Describe all instances in which you assert Lea County Sheriff's Office Undersheriff Michael Walker, Detective Diana Garcia, Sergeant Sonia Estrada, and Public Relations Officer Aileen Vizcarra targeted you as alleged in Paragraph 16 of Plaintiff's Corrected Third Amended Complaint including:

    a) details of the targeting conduct;
    b) how and when you became aware of each instance;
    c) when each instance occurred;
    d) all known witnesses to the conduct targeting you; and
    e) how these witnesses were involved in each instance.

**ANSWER:**

Objection, overbroad and vague. Plaintiff does not know what "witnesses" refers to in this context. The targeting came largely in the form of grievances filed against Plaintiff, as well as write-ups and a demotion. All those adverse employment actions are reflected in LCSO's business records. Plaintiff does not know who a "witness" to those records would be, or what information this interrogatory seeks.

Plaintiff received back-to-back complaints in or around November of 2021 and January 2022 from Diana Garcia. These complaints resulted in direct write-ups from Michael Walker, even though such disciplinary action was supposed to come from the deputy's direct supervisor (in this case, Plaintiff's sergeant).

In or around the end of June 2022, Plaintiff was the subject of complaints from employees of the Phoenix House and Child Advocacy Center for incidents that were alleged to have happened

**INTERROGATORY NO. 2:** Describe all communications with Lea County personnel concerning the second background check you conducted for Ahmaad White while you were employed with the Lea County Sheriff's Office. In your description, identify the date, method of communication, names of the Lea County employees involved in the communication(s), and just recollection of each person's representations during each communication.

**ANSWER:**

A couple days later, Plaintiff had completed the assignment, but Plaintiff's report was rejected for reasons that did not make sense. Plaintiff then talked to Mr. Hobbs again, to express that he felt LCSO was conducting Mr. White's background check in a biased way. This conversation also happened in-person.

Around one week later, Plaintiff talked to J.W. Grady and Jennette Sandoval in-person to express his concerns about Mr. White's background check process.

Plaintiff was in-touch with Mr. White throughout the process. Those conversations were over the phone. Plaintiff believes there were at least 2-3 brief phone conversations, but he does not remember the precise dates. Plaintiff communicated to Mr. White during these calls that he had concerns about LCSO's background check process.

**INTERROGATORY NO. 3:** Describe the communication identified in Paragraph 14 of Plaintiff's Corrected Third Amended Complaint including who was involved, when and how the order was relayed to you, all statements you made in response to this communication, and to whom, when, and how you made these statements.

**ANSWER:**

After Plaintiff's initial background check report was rejected, Mr. Hobbs told Plaintiff to go to City of Hobbs' HR department and review Mr. White's employment application to HPD. Mr. Hobbs' told Plaintiff that "they" (meaning LCSO administration) wanted Plaintiff to compare the HPD job application to Mr. White's current application and disqualify Mr. White for lying if there was so much as a comma off between the two documents. This conversation occurred in either Plaintiff's office or Mr. Hobbs' office.