IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ZANE BROWN,

   **Plaintiff,**         No. 2:23-CV-00355-DHU-GJF

v.

**LEA COUNTY BOARD OF
COUNTY COMMISSIONERS,**

   **Defendant.**

## PLAINTIFF'S RESPONSE TO DEFENDANT LEA COUNTY BOARD OF COUNTY COMMISSIONERS' AMENDED MOTION FOR SUMMARY JUDGMENT (DKT. 95)

Plaintiff Zane Brown ("Plaintiff"), through undersigned counsel, responds as follows to Defendant Lea County Board of County Commissioners' (the "Board") Amended Motion for Summary Judgment (Dkt. 95, the "MSJ"). As discussed below, the MSJ is without merit and should be denied.

### I. INTRODUCTION

The Board's first summary judgment motion was struck for failure to comply with the letter and spirit of the Court's page-limit order. *See* Dkt. 94 at 3. Its amended motion complies with the letter of that order, but the more fundamental defect remains: the Board continues to misunderstand what summary judgment is for.

The MSJ's central thesis is that "Plaintiff's after-the-fact claims are meaningless when *weighed* against evidence, witness reports, and his own deposition admissions that blatantly contradict his suit allegations." MSJ at 31 (emphasis added). Consistent with that premise, the Board offers 135 supposedly undisputed

facts and asks the Court to conclude that "[t]he *weight* of the evidence of Plaintiff's misconduct … entitles the County to summary judgment." MSJ at 41 (emphasis added).

That is not how summary judgment works. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

At trial, the Board may argue that Plaintiff's protected speech was not a motivating factor in the adverse employment actions, or that it would have made the same decisions regardless of his speech. *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018). But those are fact questions, and the record permits competing inferences about motive and causation. As the Tenth Circuit has repeatedly held, those specific "inquiries … are for the factfinder." *Fields v. City of Tulsa*, 753 F.3d 1000, 1014 (10th Cir. 2014) (citing *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010)).

Most of the Board's arguments require the Court to weigh evidence, judge credibility, and accept the Board's version of why Plaintiff suddenly became the subject of repeated investigations after engaging in protected activity. Those arguments fail outright. The few arguments that raise proper Rule 56 issues fail for independent reasons. The motion should be denied.

## II.    DEFENDANT'S UNDISPUTED MATERIAL FACTS

Defendant's 26 pages of "undisputed material facts" ("DUMF") are, mostly, numbered paragraphs of narration. Many of the 135 DUMFs are compound or

argumentative. *See e.g.*, DUMF Nos. 39, 50, 63, 82, 90. Dozens simply recount how witnesses made accusations. *See e.g.*, DUMF Nos. 8-12, 19-22, 70-82. Other DUMFs lack any discernable purpose. *See e.g.,* DUMF Nos. 45, 49, 59, 79, 100, 114.

Plaintiff responds as required by Local Rule 56.1, but objects to the extent the Board asks the Court to treat allegations, credibility determinations, or investigative conclusions as undisputed facts. The relevant question is not whether the Board can assemble a lengthy narrative of accusations, but whether a reasonable jury could find retaliation, causation, and pretext.

**DUMF No. 1:** Undisputed that Diana Jurado ("Jurado") submitted a complaint. But absent an inference that Plaintiff is a bully who deserved adverse employment actions (which this Court cannot draw), this fact has no legal significance.

**DUMF No. 2:** Undisputed only that Jurado complained to Jeremy Grady ("Grady"). *See* DUMF No. 1

**DUMF No. 3:** Undisputed that Plaintiff did not separately alert Investigator Jurado. Disputed that this fact has any legal significance.

**DUMF No. 4:** Undisputed that Sonia Estrada ("Estrada") made the statements. Disputed that mere allegations establish misconduct or provide a legitimate non-retaliatory basis for adverse action. Additionally, Jurado went on to perpetrate a revenge pornography scheme against a coworker that resulted in the Board paying a $3 million settlement. *See Tello v. Lea County Board of*

*Commissioners et al*, 2:24-cv-00390-KG-GJF. To the extent Brown expressed negative opinions about Jurado, he was justified in doing so.

**DUMF No. 5:** Undisputed that Plaintiff received a verbal reprimand. Disputed to the extent Defendant asks the Court to accept the investigation's conclusions, credibility assessments, or disciplinary characterization as true. Also disputed that Jeremy Grady ("Grady") believed discipline was warranted. See Exhibit 1 to Declaration of Benjamin Gubernick ("Gubernick Decl.") at ¶ 3.

**DUMF No. 6:** Undisputed only that Gretchen Koether ("Koether") complained to Corey Helton ("Helton") in June 2022.

**DUMF No. 7:** Disputed. Defendant bases this claim on a complaint made by Selena Savell ("Savell") and Laura Lucero ("Lucero"), along with portions of Victor Hernandez's September 13, 2022, report. However, Defendant omits pages from the report that contain a contradictory narrative from Children, Youth, & Families employee Ana Santana ("Santana"). See Gubernick Decl. Ex. 2 Defendant's narrative is also contradicted by former Child Advocacy Center employee Ivonne Etter ("Etter"). See Gubernick Decl. Ex. 3. Defendant may not credit some statements, disregard contrary evidence, and then claim a fact is "undisputed."

**DUMF No. 8:** Disputed. See DUMF No. 7.

**DUMF No. 9:** Disputed. See DUMF No. 7.

**DUMF No. 10:** Disputed. See DUMF No. 7.

**DUMF No. 11:** Disputed. See DUMF No. 7.

4

**DUMF No. 12**: Disputed. Plaintiff pointed out that violence can be instigated. However, Plaintiff expressly stated it was never acceptable to violate the law. See Gubernick Decl. Ex. 4 ("I understand why her ex-husband would beat her. I would never hit her, but I understand why he would.").

**DUMF No. 13:** Disputed. See DUMF No. 12.

**DUMF No. 14:** Undisputed that Michael Walker ("Walker") recommended a verbal reprimand. Defendant's argumentative claims about Walker's motives, however, are not summary judgment evidence.

**DUMF No. 15:** Undisputed that Dianna Luce ("Luce") submitted a written complaint. Disputed that her allegations were true, that she even believed them, and that they were made in good faith. See Gubernick Decl. Exs. 1, 5.

**DUMF No. 16:** Undisputed that Luce accused Plaintiff of misrepresenting a statement made by Kirk Williams ("Williams"). Disputed that the underlying documents reflect that Plaintiff misrepresented anything. Also disputed that Luce believed her accusations, or that anyone at the Lea County Sheriff's Office did either. See Gubernick Decl. Exs. 1, 5, 6.

**DUMF No. 17:** Undisputed that Helton opened an investigation into Plaintiff. Defendant's argumentative claims about Helton's motives, however, are not summary judgment evidence.

**DUMF No. 18:** Undisputed that Williams made the statements. Disputed that this has any relevance to the MSJ.

**DUMF No. 19:** Undisputed that Williams complained, disputed that the draft criminal complaint contains any mischaracterizations.

**DUMF No. 20:** Undisputed that Williams confronted Plaintiff. The Board's claim that the offer "was not" captured in the interview recording is disputed—the transcript reflects a statement by Williams that can be reasonably interpreted as a promise. Gubernick Decl. Ex. 6. Also disputed to the extent Defendant is suggesting Plaintiff acted in bad faith.

**DUMF No. 21:** Undisputed that Williams made those claims about Plaintiff. Also undisputed that Plaintiff excised language from the draft complaint on Luce's orders.

**DUMF No. 22:** Undisputed that Williams made those claims about Plaintiff. The truth of the allegations is disputed.

**DUMF No. 23:** Undisputed that Plaintiff said that. Disputed to the extent the Board is suggesting that Plaintiff was being untruthful or acted in bad faith.

**DUMF No. 24:** Undisputed that Luce and her employees complained about Plaintiff. Disputed that their allegations were true, or that they provided a non-retaliatory basis for adverse employment action against Plaintiff. Gubernick Decl. Exs. 1, 5, 7 at 21:11 – 22:21.

**DUMF No. 25:** Undisputed, but irrelevant to any issue before the Court.

**DUMF No 26:** Disputed, as unsupported by competent summary judgment evidence.

**DUMF No. 27:** Undisputed that Kirtley complained. Disputed that her complaint was true or establish non-retaliatory motive. Gubernick Decl. Ex. 1 at ¶¶ 3-4.

**DUMF No. 28:** Undisputed that a motion to suppress was filed. Otherwise, disputed. Gubernick Decl. Ex. 1 at ¶¶ 3-4.

**DUMF No. 29:** Undisputed that Kirtley complained but disputed that her allegations were accurate or establish non-retaliatory motive. Gubernick Decl. Ex. 1 at ¶¶ 3-4.

**DUMF No. 30:** Undisputed that Kirtley made these allegations. Disputed that they were true. Gubernick Decl. Ex. 1 at ¶¶ 3-4. Plaintiff also disputes the insinuation that he was responsible for "other missing disclosures."

**DUMF No. 31:** Undisputed.

**DUMF No. 32:** Undisputed that Kirtley made these allegations. Disputed that they are true, or that they are relevant to any issue before the Court. Gubernick Decl. Ex. 1 at ¶¶ 3-4.

**DUMF No. 33:** Undisputed that Kirtley made these allegations. Disputed that they are true, or that they are relevant to any issue before the Court. Gubernick Decl. Ex. 1 at ¶¶ 3-4.

**DUMF No. 34:** Disputed insofar as this paragraph contains argumentative framing ("finally responded").

**DUMF No. 35:** Undisputed that Kirtley made these allegations. Disputed that they relevant to any issue before the Court.

7

**DUMF No. 36:** Undisputed that Plaintiff was joking.

**DUMF No. 37:** Undisputed that these allegations are contained in a complaint. Disputed that they are admissible to prove the truth of the alleged misconduct.

**DUMF No. 38:** Undisputed that these hearsay allegations are contained in a complaint. Disputed that they are admissible to prove the truth of the alleged misconduct

**DUMF No. 39:** Undisputed that, per LCSO policy, the open internal affairs investigation prohibited Plaintiff from contacting CAC.

**DUMF No. 40:** Undisputed that Grady said that. Disputed that the statement is admissible for its truth or that it is relevant.

**DUMF No. 41:** Undisputed that Kirtley made these allegations. Disputed that the statement is admissible for its truth or that it is relevant.

**DUMF No. 42:** Undisputed that Grady was unaware of any issues Plaintiff had with the District Attorney's Office. Disputed to the extent Defendant contends Plaintiff had issues with the District Attorney's Office. Gubernick Decl. Ex. 1 at ¶¶ 3-4.

**DUMF No. 43:** Undisputed that Plaintiff had to miss court due to a homicide investigation, and undisputed that Plaintiff gave the District Attorney's office advance warning.

**DUMF No. 44:** Disputed. These were open cases that Plaintiff had not yet worked up. Gubernick Decl. Ex. 1 at ¶ 5. Additionally, information "discovered" after

adverse employment action is taken cannot, logically, form the basis for the adverse employment action.

**DUMF No. 45:** Disputed to the extent Defendant means to imply this step happens before an investigation is closed.

**DUMF No. 46:** Undisputed that Grady said that. Disputed that it is true or relevant. Gubernick Decl. Ex. 1 at ¶ 2.

**DUMF No. 47:** Undisputed that Grady said that. Disputed that it is true or relevant. Gubernick Decl. Ex. 1 at ¶ 2. Information "discovered" after adverse employment action cannot form the basis for the adverse employment action.

**DUMF No. 48:** Undisputed that Helton removed Plaintiff from the night shift. However, Defendant's argumentative assertions about Helton's motives are not summary judgment evidence.

**DUMF No. 49:** Undisputed that Grady was disciplined. Disputed as improper evidence to the extent Defendant suggests Grady deserved to be disciplined.

**DUMF No. 50:** Undisputed that Luce complained. Disputed that her allegations are true or establish non-retaliatory motive. Gubernick Decl. Ex. 1 at ¶¶ 3-4.

**DUMF No. 51:** Undisputed that Kirtley declined to approve a search warrant.

**DUMF No. 52:** Undisputed that Kirtley said that.

**DUMF No. 53:** Undisputed that Walker recommended demotion. Defendant's argumentative claims about Walker's motives are not summary judgment evidence.

**DUMF No. 54:** Undisputed that Helton demoted Plaintiff. Disputed to the extent the Board means to imply Helton had a non-retaliatory motive or that Plaintiff engaged in misconduct.

**DUMF No. 55:** Undisputed.

**DUMF No. 56:** Undisputed that the document Walker wrote makes those allegations. Disputed that the allegations are true or that they establish a non-retaliatory motive.

**DUMF No. 57:** Defendant's characterization of this testimony as an admission is disputed.

**DUMF No. 58:** Undisputed.

**DUMF No., 59:** Undisputed that Helton received a complaint. Disputed that Helton performed an "investigation."

**DUMF No. 60:** Disputed. Most of the people Rogers talked to left before Walker. Karina Tello told Cody Rogers ("Rogers") that, when the party ended at Applebee's, Walker was intoxicated. See Rogers Declaration Attachment 6, Tello Interview at 8:36 to 9:23. Tello also told Rogers that Andy Dominguez was present throughout the party. *Id*. at 20:46. However, Rogers never interviewed Dominguez. Additionally, Walker himself lied to Rogers. At 3:45 in Walker's interview, he is asked "were you ever at any point concerned that you might be intoxicated or that you shouldn't be driving?" Walker responds, "I was not." However, in deposition Walker stated he switched to drinking water before leaving Applebee's because he "didn't want to leave there intoxicated" and thought the water would help him sober up.

Gubernick Decl. Ex. 13 at 22:4-15. Walker also admitted to driving drunk on other occasions. *Id.* 23:20-21.

**DUMF No. 61:** Undisputed that Bova said that to Walker.

**DUMF No. 62:** Undisputed only that Helton hired a third party to investigate Plaintiff. Defendant's claims about Helton's motivation or the fairness of the investigation are argumentative and not summary judgment evidence.

**DUMF No. 63:** Undisputed that Plaintiff was placed on leave. The claim that the Board was motivated by "concern[] he was trying to coerce witnesses" is argumentative and disputed—a reasonable jury could find Plaintiff was put on leave for blowing the whistle on Walker. See Gubernick Decl. Ex. 14 at 65:4–66:13, 67:3–13

**DUMF No. 64:** Undisputed that Plaintiff did not attend the party. Disputed that Plaintiff refused to talk to Rogers "on the advice of his attorney" as unsupported by any admissible evidence.

**DUMF No. 65:** Undisputed that Rodriguez made that statement. Disputed that the allegations are true or that they establish a non-retaliatory motive.

**DUMF No. 66:** Undisputed that Jasmine Sanchez made that statement. Disputed that the allegations are true or that they establish a non-retaliatory motive.

**DUMF No. 67:** Disputed. See DUMF No. 60.

**DUMF No. 68:** Undisputed that Jasmine Sanchez and Tello made statements. Disputed that the allegations are true or that they establish a non-retaliatory motive.

**DUMF No. 69:** Undisputed that Jasmine Sanchez made those statements. Disputed that the allegations are true or that they establish a non-retaliatory motive.

**DUMF No. 70:** Undisputed that Jasmine Sanchez made those statements. Disputed that the allegations are true or that they establish a non-retaliatory motive.

**DUMF No. 71:** Undisputed.

**DUMF No. 72:** Undisputed that Sanchez made those statements. Disputed that the allegations are true or that they establish a non-retaliatory motive.

**DUMF No. 73:** Undisputed that Tello made that statement. Disputed that it matters for the MSJ.

**DUMF No. 74:** Undisputed that Tello made that hearsay statement. Disputed that it matters at all for the Board's MSJ.

**DUMF No. 75:** Undisputed that Tello made that statement. Disputed that it matters for the MSJ.

**DUMF No. 76:** Undisputed that Tello made that statement. Disputed that it matters for the MSJ. Also, the insinuation that Plaintiff has "ma[de] something up" is improper argument.

**DUMF No. 77:** Undisputed that Jasmine Sanchez made those statements. Disputed that they are admissible as evidence of Plaintiff's state of mind or motivations.

**DUMF No. 78:** Undisputed that Walker made that self-serving statement while not under oath during Rogers' interview. Disputed that it is admissible to prove

the truth of the matter asserted. Also disputed that Walker was telling the truth. *See* DUMF No. 60.

**DUMF No. 79:** Undisputed that Walker made that self-serving statement while not under oath during Rogers' interview. Disputed that it is true. *See* DUMF No. 60.

**DUMF No. 80:** Undisputed that Walker made that self-serving statement while not under oath during Rogers' interview. Disputed that the Court can evaluate witness credibility on summary judgment.

**DUMF No. 81:** Undisputed that Rogers' report says that. Disputed that the allegation is true or that it establishes a non-retaliatory motive. *See* DUMF No. 60.

**DUMF No. 82:** Undisputed that Jimenez was ordered to investigate Plaintiff. Disputed to the extent Defendant argues the investigation was non-retaliatory.

**DUMF No. 83:** Undisputed that Plaintiff spoke with Rodriguez, Sanchez, and Tello. Disputed to the extent Defendant claims whistleblowing violates County policy.

**DUMF No. 84:** Undisputed.

**DUMF No. 85:** Disputed as unintelligible.

**DUMF No. 86:** Undisputed that Sanchez made the statement. Disputed to the extent the Board contends it shows non-retaliatory motive for the adverse employment action taken against Plaintiff.

**DUMF No. 87:** Undisputed that Sanchez made that statement. Disputed that it is true or admissible as evidence of Plaintiff's character or motivation.

**DUMF No. 88:** Undisputed that Plaintiff said that.

**DUMF No. 89:** Undisputed that Sanchez made that statement. The insinuation that Plaintiff acted with improper motives when he reported Walker's drunk driving is argumentative and disputed.

**DUMF No. 90:** Undisputed that Sanchez made that statement. Disputed that the allegation is true or that it establishes a non-retaliatory motive.

**DUMF No. 91:** Undisputed that Sanchez made that statement. Disputed that the allegation is true or that it establishes a non-retaliatory motive.

**DUMF No. 92:** Undisputed that Sanchez made that statement. Disputed that the allegation is true or that it establishes a non-retaliatory motive.

**DUMF No. 93:** Undisputed that Sanchez made that statement. Disputed that the allegation is true or that it establishes a non-retaliatory motive.

**DUMF No. 94:** Undisputed that Sanchez made that statement. Disputed that the allegation is true or that it establishes a non-retaliatory motive.

**DUMF No. 95:** Undisputed.

**DUMF No. 96:** Undisputed that Sanchez made that statement.  Disputed that the allegations are true or that they establish a non-retaliatory motive. Plaintiff also objects to the Board's "one example" framing as improper vouching.

**DUMF No. 97:** Undisputed that Tello made those statements. Disputed that the allegations are true or that they establish a non-retaliatory motive.

 **DUMF No. 98:** Undisputed.

**DUMF No. 99:** Undisputed that Sandoval made those statements. Disputed that the allegations are true or that they establish a non-retaliatory motive.

14

**DUMF No. 100:** Undisputed that Jurado leveled those allegations. Their truth is disputed, as is the implication that the allegations establish a non-retaliatory motive. Gubernick Decl. Ex. 9 at 49:10 – 51:12, 53:25 – 54:20, 57:18 – 58:8, 69:9-15, 69:16-22

**DUMF No. 101:** Undisputed that Jurado leveled those allegations. Their truth is disputed, as is the implication that the allegations establish a non-retaliatory motive. Gubernick Decl. Ex. 9 at 49:10 – 51:12, 53:25 – 54:20, 57:18 – 58:8, 69:9-15, 69:16-22

**DUMF No. 102:** Undisputed that Jurado leveled those allegations. Their truth is disputed, as is the implication that the allegations establish a non-retaliatory motive. Gubernick Decl. Ex. 9 at 49:10 – 51:12, 53:25 – 54:20, 57:18 – 58:8, 69:9-15, 69:16-22

**DUMF No. 103:** Undisputed that Walker said it. Disputed that the allegation is true or that it establishes a non-retaliatory motive.

**DUMF No. 104:** Undisputed that the report says that. Disputed that the allegation is true or that it establishes a non-retaliatory motive

**DUMF No. 105:** Undisputed that Helton prepared the memorandum. Disputed as argumentative that Helton's actions were a "[c]onsequen[ce]" of Jimenez's report.

**DUMF No. 106:** Undisputed.

**DUMF No. 107:** Undisputed.

**DUMF No. 108:** Disputed. DUMF No. 122 states that Walker *did* participate in White's hiring process.

**DUMF No. 109:** Undisputed that the policy manual says that.

**DUMF No. 110:** Undisputed that the job posting said that.

**DUMF No. 111:** Undisputed.

**DUMF No. 112:** Undisputed.

**DUMF No. 113:** Undisputed that White disclosed that LCSO declined his employment in 2008. Disputed as to Travis Hobbs' motivation. Gubernick Decl. Ex. 1 at ¶¶ 9-11.

**DUMF No. 114:** Undisputed.

**DUMF No. 115:** Disputed. Defendant's argumentative claims about Travis Hobbs' motives are not summary judgment evidence.

**DUMF No. 116:** Undisputed.

**DUMF No. 117:** Undisputed.

**DUMF No. 118:** Undisputed that the policy manual says that. Disputed that policy was followed.

**DUMF No. 119:** Undisputed.

**DUMF No. 120:** Undisputed.

**DUMF No. 121:** Undisputed.

**DUMF No. 122:** Undisputed.

**DUMF No. 123:** Undisputed.

**DUMF No. 124:** Undisputed.

**DUMF No. 125:** Undisputed.

**DUMF No. 126:** Undisputed.

**DUMF No. 127:** Undisputed.

**DUMF No. 128:** Undisputed.

**DUMF No. 129:** Undisputed that the incident occurred prior to White's job application, but that misses the point. The write-up was placed in Plaintiff's employment file long after Plaintiff complained about White's application process.

**DUMF No. 130:** Undisputed that the documents were not placed in Plaintiff's employment file. Gubernick Decl. Ex. 15. at 22:11 – 28:10.

**DUMF No. 131:** Undisputed.

**DUMF No. 132:** Undisputed that the policy manual contains that language.

**DUMF No. 133:** Undisputed that LCSO has repeatedly interfered with Plaintiff's efforts to find a job. Undisputed that Plaintiff has been able to find work despite that interference.

**DUMF No. 134:** Undisputed that LCSO has repeatedly interfered with Plaintiff's efforts to find a job. Undisputed that Plaintiff is currently employed despite that interference. Gubernick Decl. Ex. 1 at ¶ 15.

**DUMF No. 135:** Undisputed that HPD was concerned about retaliation from Helton.

## III.   PLAINTIFF'S UNDISPUTED MATERIAL FACTS

Plaintiff designates the following additional undisputed facts ("PUMF") as supported by the record and material to the MSJ's resolution:

**PUMF No. 1:** Plaintiff was ordered to find a pretext LCSO could use to disqualify White. Gubernick Decl. Ex. 1 at ¶ 10.

**PUMF No. 2:** Plaintiff objected that the order appeared biased. Gubernick Decl. Exs. 1 at ¶ 11, 15 at 145:7–146:25.

**PUMF No 3:** Prior to his voicing concerns about the White background check, neither Helton nor Walker had any problems with Zane Brown. Gubernick Decl. Exs. 7 at 9:8-22, 13 at 8:20 – 9:9.

**PUMF No. 4:** Brown was regarded as a competent investigator prior to being targeted by Helton and Walker. Gubernick Decl. Exs. 10 148:21 – 149:1, 15 at 14:1–13.

**PUMF No 5:** Walker became hostile towards Plaintiff after Plaintiff voiced concerns about the White background check. Gubernick Decl. Ex. 14 at 69:22 – 70:16.

**PUMF No. 6:** Helton ordered an investigation into Plaintiff after Plaintiff complained about Walker's drunk driving. Gubernick Decl. Ex. 7 at 26:12 – 27:24.

**PUMF No. 7:** In late summer or fall of 2022, Helton called White and threatened to sabotage efforts to merge the LCSO and HPD SWAT teams unless White stayed away from Plaintiff. Gubernick Decl. Ex. 11.

**PUMF No. 8:** Megan Kirtley is Helton's daughter. Gubernick Decl. Ex. 1 at ¶ 6.

**PUMF No. 9:** Helton blackballed Plaintiff. Gubernick Decl. Ex. 10 at 22:13 – 25:7, 144:6 –147:21.

**PUMF No. 10:** Helton attempted to get Plaintiff fired from the UPS store. Gubernick Decl. Exs. 12 at ¶¶ 2–4, 1 at ¶ 15.

**PUMF No. 11:** Helton attempted to dissuade the Lovington Police Department from hiring Plaintiff. Gubernick Decl. Ex. 5

**PUMF No. 12:** Walker withheld disciplinary documents from Plaintiff's employment file.  Gubernick Decl. Ex. 15. at 22:11 – 28:10.

**PUMF No. 13:** Helton, Walker, or both told Robert Blanchard that he would find disqualifying information about Plaintiff in Plaintiff's Lea County employment file. Gubernick Decl. Ex. 8 at 22:14 – 25:3.

**PUMF No. 14:** Walker and Jurado were part of clique of favored employees at LCSO that received special treatment from Helton. Gubernick Decl. Ex. 10 at 106:1 – 107:4.

**PUMF No. 15:** Helton frequently applies double standards based on favoritism, including with internal affairs investigations. Gubernick Decl. Ex. 10 at 34:22 – 37:9, 78:15–79:18.

**PUMF No. 16:** Helton harbors extreme personal animus towards Plaintiff. Gubernick Decl. Ex. 10 at 104:13 – 05:25, 106:1 – 16, 146:16 – 147:21.

## IV.    LEGAL STANDARD

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Only if the movant

meets its burden is the nonmovant required to point the court to evidence showing a genuine fact issue for trial. *Anderson*, 477 U.S. at 248-52). "[I]f the moving party does not raise an issue in support of its motion for summary judgment, the nonmoving party is not required to present evidence on that point, and the district court should not rely on that ground in its decision." *Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006). A court must "review the evidence and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *Commercial Union Ins. Co. v. Sea Harvest Seafood Co.*, 251 F.3d 1294, 1298 (10th Cir. 2001).

## V.   ARGUMENT

### A. The MSJ fails because Defendant asks the Court to perform functions reserved for the jury.

The MSJ's argument section opens with this: "Plaintiff cannot *pursue* … liability claims based on alleged First Amendment retaliation *without demonstrating* … First Amendment violations." MSJ at 27 (emphasis added). But that is plainly incorrect. While Plaintiff must prove his claims to *prevail at trial*, he need not do so to defeat summary judgment.

This is not a nitpick. Rather, it reflects a defect that permeates Defendant's brief. Time and again, the MSJ asks the Court to:

- Treat accusations as established fact. *See e.g.,* MSJ at 1 (stating that Plaintiff "sexually harassed and stalked his co-workers and traumatized a child victim of severe sexual violence.");

- Draw inferences about people's motives. *Id.* at 28 ("Self-preservation prompted Plaintiff's resignation rather than any alleged protected activity."); *id.* at 31 ("Plaintiff's friendship with White suggests he was only doing his friend a favor to support their respective lawsuits against the County."); and

- Credit Defendant's witnesses while discounting Plaintiff's. *Id.* at 34 ("credible allegations and evidence from the various individuals from outside agencies supported Plaintiff's [discipline].").

The MSJ even claims the Court "must disregard the inference of retaliation." *Id.* at 28. But disregarding inferences that favor the non-movant is the opposite of summary judgment. The Court's role is not to try the case on paper or decide who to believe; it is to determine whether disputed issues exist to be "decided by a jury." Dkt. 94 at 3. And on this record, disputed material facts bar summary judgment.

## B. Plaintiff's First Amendment retaliation claim turns on disputed material facts

"[T]he First Amendment prevents state and local governments from conditioning public employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression." *Duda v. Elder*, 7 F.4th 899, 910 (10th Cir. 2021) (brackets and quotation marks omitted). That includes criticism of the employer's wrongs. *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion.")

21

When a public employee alleges they have been retaliated against for exercising their First Amendment rights, the claim is evaluated through a five-step analysis:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Trant*, 754 F.3d at 1165 (citing *Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968); *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009)). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Id*.

Here, the MSJ appears to challenge elements (2), (4), and (5), so those will be addressed in turn.

### 1. Plaintiff spoke out on matters of public concern.

"Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quotation marks omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement[.]" *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

Plaintiff alleges he was retaliated against for speaking out about two topics: (1) potential race-based manipulation of Ahmaad White's ("White") LCSO job application; and (2) suspected drunk driving by Walker. These are paradigmatic matters of public concern.

Starting with White's application, "it is clear that … statements concerning … allegedly racially discriminatory policies involve[] a matter of public concern." *Id.* at 146. And that describes Plaintiff's speech exactly. In essence, Plaintiff was asked to *find a pretext* LCSO could use to disqualify White. Plaintiff was entitled to voice his concerns about what that pretext may have been for.

Likewise, crediting Plaintiff's testimony—as the Court must at this juncture— Plaintiff spoke about potential drunk driving by Walker.  "Speech disclosing illegal conduct by government officials is inherently a matter of public concern." *Rogers v. Riggs*, 71 F.4th 1256, 1260 (10th Cir. 2023) (quotation marks omitted). That includes "speech concerning *potential* illegal conduct by government officials[.]" *Cowden v. Bd. of Governors of Colorado State Univ. Sys. by & through Colorado State Univ.-Pueblo*, 622 F. Supp. 3d 1019, 1033 (D. Colo. 2022), dismissed sub nom. *Cowden v. Bd. of Governors for Colorado State Univ. Sys. by & through Colorado State Univ.-Pueblo*, No. 22-1293, 2022 WL 19078175 (10th Cir. Dec. 19, 2022) (emphasis added). This element of the *Garcetti/Pickering* test is satisfied.

The MSJ's counterarguments lack merit. To start with, Defendant claims that "Plaintiff admitted he knew there was no impropriety in White's application process." MSJ at 28. But Plaintiff never said that. Tellingly, the citations Defendant provides

are to DUMF Nos. 1-8, which have nothing to do with White's application process. Ditto Defendant's citations to DUMF Nos. 139-141 and 280-281, which do not even exist. *See also*, MSJ at 36 (citing non-existent and unrelated DUMFs for the claim that "Plaintiff concocted a conspiracy to avoid the serious allegations levied against him."); MSJ at 28 (no citations whatsoever for the claim that "Plaintiff cannot keep his complaint allegations straight and admitted to many of the facts at issue in his discipline at the time each incident was investigated.").

Next, Defendant spills much ink attempting to prove White was not discriminated against. *See e.g.,* MSJ at 30 ("Plaintiff was the first to confirm White's misrepresentation, yet this lawsuit exists."). But that argument misses the mark. It makes no difference whether misconduct is ultimately found to have occurred. *Maxfield v. Bressler*, No. 12-CV-2970-WJM-NYW, 2015 WL 1525036, at *5 (D. Colo. Mar. 31, 2015) ("*Pickering* held that the teacher's criticism of school expenditures was a matter of 'legitimate public concern' without any mention of the falsity of his statements on that matter."). Plaintiff was ordered to find a reason to disqualify a black applicant. He objected to the order and told Hobbs he was concerned it was biased. He then called White and said he suspected racial discrimination. Whether White ultimately turned out to be a victim of racial discrimination is irrelevant.

Finally, Defendant appears to contend that Plaintiff's speech is unprotected because his "[i]ndividual employee interests … predominate[d] over public interests[.]" MSJ at 29. More specifically, Defendant posits that "Plaintiff's friendship with White suggests he was only doing his friend a favor" by complaining about LCSO

24

hiring process. MSJ at 31. It is true that a statement will often not be of public concern where the "aim is simply to air grievances of a purely personal nature[.]" *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1225 (10th Cir. 2000). The problem, however, is Plaintiff's motive is disputed. And in any event, the speaker's motive is just one ingredient in the soup when it comes to the "content, form, and context of a given statement[.]" *Connick*, 461 U.S. at 147–48.

### 2. Defendant's motive is disputed.

The MSJ's arguments about what motivated Helton and Walker fare no better. The crux of Defendant's position is that the "harm" Plaintiff "allegedly caused" was "potentially immeasurable[.]" MSJ at 35. Therefore, Plaintiff's speech "was not a substantial motivating factor" in the adverse employment action taken against him. *Id*. at 29.

For sure, "summary judgment may … be appropriate if there is no evidence from which a reasonable jury could find that the protected activity was a motivating factor in the adverse action." *Cousik v. City & Cnty. of Denver*, No. 22-CV-01213-NYW-KAS, 2024 WL 896755, at *4 (D. Colo. Mar. 1, 2024).

But the issue of a defendant's motive is "is generally a factual one, and it is in this case too." *Finley v. City of Colby, Kansas*, No. 17-1215-EFM, 2020 WL 1547821, at *6 (D. Kan. Apr. 1, 2020). That is because the record contains ample evidence from which a reasonable jury could infer retaliatory animus.

Plaintiff testified that his relationship with Walker changed after the White background issue. Before, Walker was friendly. Afterwards, he became hostile and

issued write-ups directly to Plaintiff, even though write-ups would normally come from an employee's immediate supervisor. Additionally, almost all the complaints about Plaintiff originated from Walker's friend Jurado, the Child Advocacy Center (where Walker serves on the board), and a district attorney's office where Helton's daughter is chief deputy. Moreover, after Plaintiff resigned Helton attempted to get Plaintiff fired/prevent him from being hired elsewhere—actions Bova thought would be improper and probably illegal. Additionally, for the first seven years Plaintiff worked at LCSO, neither Helton nor Walker had any problems with his job performance. Finally, an LCSO chief deputy testified to the favoritism Helton showed Walker, and the personal animus Helton harbored towards Plaintiff.

Against that backdrop, a jury could easily find Plaintiff was targeted for speaking out about White's application, and that the retaliation intensified when Plaintiff complained about Walker driving drunk. *Iweha v. State of Kan.*, 121 F.4th 1236 (10th Cir. 2024) (a plaintiff can establish a causal connection by presenting "evidence of circumstances that justify an inference of retaliatory motive."). Summary judgment is inappropriate.

### 3. Defendant's "same decision" arguments fail.

For similar reasons, a reasonable jury may reject the Board's contention that Plaintiff would have suffered adverse employment action regardless of Helton and Walker's motives.

For this step in the *Garcetti/Pickering* analysis, "the burden … shifts to the defendant, who must show by a preponderance of the evidence it would have reached

the same employment decision in the absence of the protected activity." *Cragg v. City of Osawatomie, Kan.*, 143 F.3d 1343, 1346 (10th Cir. 1998). Whether the employer has met its burden is ordinarily a "question[] for the trier of fact." *Id.*

Distilled down, Defendant's logic goes like this:

- "Plaintiff was the subject of multiple investigations." MSJ at 28. AND

- "Voluminous witness statements[,]" *id.*, show that Plaintiff "sexually harassed and stalked his co-workers and traumatized a child victim of severe sexual violence." *Id* at 1. SO THEREFORE

- Plaintiff deserved "*substantial* discipline." *Id*. at 34 (emphasis original).

The first premise is correct—after six years of satisfactory performance, Plaintiff suddenly became the target of an avalanche of investigations. Everything else, however, is contested.

Defendant devotes dozens of pages recounting complaints leveled at Plaintiff, much of the alleged misconduct falls into four narrow categories: (1) bullying and harassing Jurado (DUMF Nos. 1-5, 100-102); (2) mistreating child witnesses (DUMF Nos. 7-12); (3) making misrepresentations about Williams (DUMF Nos. 16-22); and (4) failing to cooperate with the district attorney's office (DUMF Nos. 24-35, 43-45, 50-52). And for each category, "when put to the test, Defendants' evidence of Plaintiff's deficient work performance is far less compelling than their affidavit statements lead[] one to believe." *Aguilar v. Harding Cnty., New Mexico*, No. CV 14-808 JAP/LAM, 2016 WL 10592155, at *8 (D.N.M. Jan. 29, 2016).

*First*, the Court should take the Jurado-related allegations with a grain of salt. Jurado was close friends with Walker and treated preferentially by Helton. Moreover, Jurado testified in deposition that her "only complaint with Zane" (Gubernick Decl. Ex. 9 at 53:25 – 54:20) was his failure to call her out to a homicide scene she was "not involved in … at all." *Id.* at 49:10 – 51:12. Aside from that, Jurado "didn't have a problem with Zane." *Id.* at 57:18 – 58:8. Indeed, Jurado testified for the "two and a half years" she worked as a detective with Plaintiff, they "got along pretty well and worked together well." *Id.* at 69:9-15. She also agreed that, to her knowledge, Plaintiff did a good job on his cases. *Id.* at 69:16-22.[1]

*Second*, the MSJ's claim that Plaintiff "traumatized" child victims during CAC interviews is weakly supported. The only evidence Defendant musters is the Savell/Lucero complaint—inadmissible hearsay that is contradicted by two other CAC employees. Additionally, Walker's position at CAC and his request to meet with Savell and Lucero behind closed doors suggest the complaint was the product of undue influence.

*Third*, what is the Board saying Plaintiff did wrong with regards to the draft criminal complaint? The draft states Robert Lewis agreed to "cooperate with the District Attorney's office" if Williams could "get him a deal in writing[.]" And in response, "ADA Williams told Robert he would …write up a deal for him on a latter date." Dkt. 95-6 at page 3. Compare that to the transcript of the interview, where

---

[1] Later in the deposition Jurado did offer a litany of additional complaints about Plaintiff. However, that testimony was in response to re-direct questioning by the Board's counsel, after an approximately 20-minute break. A reasonable jury could assign it little or no weight.

Williams tells Lewis "if I can get rid of it, I'm happy to get you something in writing" and "I need to get back to the office and look at it first, so, and then type something out verbal for us to sign, so I'll get it in writing for ya."

At worst, Williams' promise was slightly squishier than Plaintiff recalled. That is not evidence of intentional misrepresentation, especially as Plaintiff made the statement in an unsigned draft document that *he sent to the District Attorney's Office for review*. Walker and Luce even acknowledged that Plaintiff had not engaged in misrepresentation or deceit.

***Fourth and finally***, the Board's characterization of Plaintiff as an incompetent officer who routinely torpedoed court cases suffers from a failure of proof. Defendant points to complaints from Kirtley and Luce, but the former is Helton's daughter, and the latter has taken inconsistent positions about Plaintiff's job performance. Moreover, the District Attorney's Office was unable to produce any documentation supporting the accusations in response to Plaintiff's records request. Such hearsay cannot provide the backbone for summary judgment.

In summary, Defendant's evidence stands in stark contrast to the sort that can support summary judgment. *Cf. Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 117 (2d Cir. 2011) (given "undisputed evidence of … insubordination and … efforts to address it … beginning well before any allegedly protected conduct[,] … any reasonable jury would find that [the plaintiff] would have been terminated even absent any desire on the Defendants' part to punish him in retaliation for his allegedly protected speech.").

The record reflects years of adequate job performance, followed by an avalanche of dubious complaints and investigations after Plaintiff engaged in protected activity. Viewed in the light most favorable to Plaintiff, that cautions against summary judgment, not for it:

> With respect to the "significant number of complaints" by road crew members, many of the complaints appear to have been gathered from road crew members in a meeting on June 10, 2014, just before the County Commissioners voted to terminate Plaintiff's employment. Indeed, the County Commissioners apparently "invited" some of the road crew to "hear their stories firsthand and to allow them an opportunity to bring to light some things that were happening in the road department that they had serious trouble with." Defendants' evidence about complaints from chance encounters with community members and from road crew who appeared at Defendant Commissioners' invitation is not compelling evidence.

Aguilar, 2016 WL 10592155, at *9 (citations omitted). The same is true here. Summary judgment should be denied.

### C. Defendant's Title VII/Human Rights Act arguments lack merit.

The MSJ's challenge to Plaintiff's Title VII and New Mexico Human Rights Act claims also fails to persuade.

To start with, Defendant applies the wrong analytical framework. The MSJ states that "Walker never complained against Plaintiff, and so the retaliation claims are reviewed under a 'cat's paw causation theory[.]'" MSJ at 38 (citing *Byrnes v. St. Catherine Hosp.*, 158 F.4th 1107, 1114 (10th Cir. 2025). But that makes no sense. "In the employment discrimination context, 'cat's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action."

*E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006). In other words, cat's paw applies when there is bottom-up retaliation.

But Plaintiff has never claimed that Walker or Helton (the decisionmakers) were duped by subordinates. Rather, Plaintiff alleges *top-down* retaliation—that Helton and Walker themselves engaged in retaliatory conduct. Thus, the issue is not imputed animus; it is whether the decisionmakers' own conduct, viewed in Plaintiff's favor, permits an inference of retaliation. Defendant's argument does not make it out of the gate. *Iweha v. State of Kansas*, 121 F.4th 1208, 1228 (10th Cir. 2024) (Cat's paw presupposes that "the decisionmaker has no discriminatory animus[.]").

Next, Defendant asserts that "[a]t most, the instruction to scrutinize White's application and compare it with his HPD application is non-actionable 'distasteful' conduct." MSJ at 38. But that is just *ipse dixit*. Crediting the non-movant's version of events (as this Court must at this juncture), Plaintiff was told to find a pretext for rejecting White. That is not mere distasteful conduct—it is a giant red flag from which a reasonable person could infer racial bias.

Finally, the Board recycles its earlier argument that "[t]he basis for Plaintiff's discipline thoroughly demonstrates a lack of causation." MSJ at 38. But as already discussed, that conclusion requires the Court to weigh evidence and draw inferences against Plaintiff. Defendant is welcome to argue about causation at trial, but it may not do so at summary judgment on this record.

31

### D. Plaintiff's NMCRA claim does not "arise from" his employment.

Defendant is wrong that the "arise from employment" exception to the NMCRA bars Plaintiff's claims. Plaintiff's NMCRA claim does not arise from his employment, but rather from blackballing that started *after* Plaintiff left LCSO.

Last year, another federal court in New Mexico considered and rejected a similar argument from the same defendant. See *Tello v. Lea County Board, et al.*, 2:24-cv-00390-KG-GJF (D.N.M.) (Dkt. #40, dated March 27, 2025). In *Tello*, plaintiff alleged she was terminated after a group of coworkers stole an intimate video and disseminated it to LCSO leadership.[2] Same as here, the Board argued plaintiff's NMCRA claim was barred.

The court observed that while New Mexico courts have yet to define when a claim "arises from" employment in the NMCRA context, there is ample caselaw about when a claim "arises from" employment in the worker's compensation context. *Id.* at 6. In that context, "a claim 'arises from' employment when the 'causative danger [is] peculiar to the work itself and not independent of the employment relationship.'" *Id.* (citing *Flores v. McKay Oil Corp.*, 2008-NMCA123, ¶ 10). Thus, "a plaintiff's claim 'arises from' employment only if it was reasonably foreseeable to the nature and manner of employment." *Id.* (citing *Rodriguez v. Permian Drilling Corp.*, 2011-NMSC-032, ¶ 9). Applying this precedent, the court held that having an intimate video sent around the office without consent was not a foreseeable consequence of the plaintiff's employment. *Id.* at 7.

---

[2] Helton and Walker were also Defendants in *Tello*.

32

Here, Defendant might have a point if it had simply left Plaintiff alone after he left LCSO. But Defendant did not. Instead, Helton used his position as a cudgel to discourage people from employing Plaintiff. Blackballing, by definition, occurs "independent of the employment relationship." Moreover, it is hardly "foreseeable," nor is it a risk "peculiar to the work itself."

### E. Plaintiff states a violation of the New Mexico Constitution.

Defendant also argues its conduct did not violate the New Mexico Constitution, but this too is wrong. As to Section 4, Defendant brushes the whole provision off as "unenforceable," but they cite no authority for that proposition. As to Section 17, there is no bar on free speech/retaliation claims under the New Mexico Constitution. The opposite is true—authority cited by Defendant suggests the New Mexico Constitution would look to federal First Amendment precedent and recognize such a claim. *See City of Albuquerque v. Pangaea Cinema LLC*, 284 P.3d 1090, 1099 (N.M. Ct. App. 2012) (no reason to depart from First Amendment precedent on Article II, Section 17 claims), *rev'd on other grounds by State v. Pangaea Cinema LLC*, 310 P.3d 604 (cited by Defendant's MSJ at page 40).

With respect to Section 18, Defendant references the "stigma-plus" standard for harm to a plaintiff's reputation. MSJ at 40. As the Tenth Circuit explained in *McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014), "[a] public employee has a liberty interest in his good name and reputation as they relate to his continued

employment." *Id.*[3] The facts of *McDonald* are instructive. There, a city employee was fired after dubious sexual harassment allegations arose. *Id.* at 1208-09. The mayor then told the media that the employee was fired for "serious misconduct." *Id.* at 1209. The employee sued and claimed, *inter alia*, that his liberty interest in employment post-termination was diminished after the mayor's disparaging remark. *Id.* at 1212. The Tenth Circuit agreed with the employee and permitted his due process claim to proceed. *Id.*   The Court noted that the employee "ha[d] been unable to find employment because of the media reports of his misconduct."  *Id.*

Here, if anything, Defendant's conduct is worse than in *McDonald*, where the mayor made only one disparaging remark at one press conference. Compare that to here, where Helton has made it his life work to not force Plaintiff out of law enforcement, but prevent him from holding down any employment in Lea County. That is a public official using the influence of his office to pursue an Inspector Javert-like grudge.

### F. The Court should reject the Board's WPA challenge.

Lastly, the Board devotes a single paragraph to Plaintiff's Whistleblower Protection Act claim. The MSJ asks this Court to consider the "[t]he weight of the evidence of Plaintiff's misconduct" and find that Plaintiff "never believed he was

---

[3] While *McDonald* concerned the Fourteenth Amendment to the U.S. Constitution, the same analysis should apply to Plaintiff's state law rights.  *See Lux v. Bd. of Regents of New Mexico Highlands Univ.*, 1980-NMCA-164, ¶ 7 (citing federal precedent relating to liberty interest in future employment).

asked to do something unlawful."[4] MSJ at 41. But the Court can neither weigh evidence nor peer into Plaintiff's brain and decide what he did or did not believe. Those questions are for the jury.

## VI.   CONCLUSION

For the foregoing reasons summary judgment should be denied.

Respectfully submitted,

WGLA, LLP

*/s/ Benjamin Gubernick___*
Benjamin Gubernick
Curtis Waldo
717 Texas Ave. Suite 1200
Houston, TX 77002
ben@wglawllp.com
curtis@wglawllp.com
(346) 277-0287
(713) 306-0512

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that I caused this document to be served on counsel for Defendant on June 8, 2026.

*/s/ Benjamin Gubernick*
Benjamin Gubernick

---

[4] "Unlawful" is not required. The WPA also protects public employees who complain about acts they believe in good faith are improper. *Velasquez v. Regents of N. New Mexico Coll.*, 2021-NMCA-007, ¶ 5, 484 P.3d 970, 975–76