**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ZANE BROWN,**

**Plaintiff,** **No. 2:23-cv-00355-DHU-GJF**

**v.**

**LEA COUNTY BOARD OF**
**COUNTY COMMISSIONERS,**

**Defendant.**

# PRETRIAL ORDER

THIS MATTER is before the Court pursuant to Fed. R. Civ. P. 16. The parties conferred and submit the following Pretrial Order.

## I. APPEARANCES

Attorneys who will try this action:

For Plaintiff: Benjamin Gubernick and Curtis Waldo

For Defendant: Blaine T. Mynatt, Benjamin J. Young, and Haley R. Grant

## II. JURISDICTION AND RELIEF SOUGHT

**A. Subject Matter Jurisdiction.**

1. **Was this action removed or transferred from another forum?** No

2. **Is subject matter jurisdiction of this Court contested?** Uncontested

3. **Asserted basis for jurisdiction.** Federal Question. 42 U.S.C. § 1983, 42 U.S.C. § 2000e-2

**B. Personal Jurisdiction and Venue.**

1. **Is personal jurisdiction contested?** Uncontested

2. **Is venue contested?** Uncontested

**C. Are the proper parties before the Court?** Uncontested

**D. Identify the affirmative relief sought in this action.**

1. Plaintiff seeks: actual damages, punitive damages, reasonable attorney's fees, costs, injunction against further blackballing or other retaliatory action

2. Defendant seeks: Defendant does not seek damages

## III. BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

**A. Plaintiff's Claims:**

First Cause of Action: New Mexico Whistleblower Protection Act, N. M. S. A. 1978, § 10-16C-1 et seq. Plaintiff alleges he engaged in protected conduct by objecting to and complaining about: (1) potential racial discrimination in Ahmaad White's application process; and (2) potential drunk driving by Undersheriff Michael Walker. Plaintiff further alleges these protected activities were motivating factors in subsequent adverse employment action.

Second Cause of Action: Violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq. Plaintiff alleges he engaged in protected conduct by objecting to and complaining about potential racial discrimination in Ahmaad White's application process. Plaintiff further alleges these protected activities motivated subsequent adverse employment action.

Third Cause of Action: Violation of the New Mexico Civil Rights Act NMSA 1978, § 41-4A-3. Plaintiff alleges he engaged in constitutionally protected speech when he objected to and complained about: (1) potential racial discrimination in Ahmaad White's application process; and (2) potential drunk driving by Undersheriff Michael Walker. Plaintiff further alleges these protected activities motivated subsequent adverse employment action.

Fourth Cause of Action: Violation of the First Amendment 42 U.S.C. § 1983. Plaintiff alleges he engaged in constitutionally protected speech when he objected to and complained about: (1) potential racial discrimination in Ahmaad White's application process; and (2) potential drunk driving by Undersheriff Michael Walker. Plaintiff further alleges these protected activities motivated subsequent adverse employment action. Finally, Plaintiff alleges the Board has a custom or practice of punishing employees who object to, complain about, or refuse to participate in wrongful conduct by sheriff's office officials.

Fifth Cause of Action: Violation of the New Mexico Human Rights Act NMSA 1978, § 28-1-1, et seq. Plaintiff alleges he engaged in protected conduct by objecting to and complaining about potential racial discrimination in Ahmaad White's application process. Plaintiff further alleges these protected activities motivated subsequent adverse employment action.

**B. Defendant's Defenses:**

First Cause of Action, New Mexico Whistleblower Protection Act, NMSA 1978, § 10-16C-1 et seq.: Plaintiff did not communicate a public concern triggering the protections of the New Mexico Whistleblower Protection Act.

Additionally, Plaintiff's discipline was not based on retaliation. The County received four complaints against Plaintiff and conducted investigations into each with the fourth complaint's investigation completed after Plaintiff's resignation.

Second Cause of Action, Violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. §§ 2000e, et seq.: Plaintiff cannot prove a Title VII prima facie case of retaliation for opposing discriminatory hiring practices, because the County had no reason to know that Plaintiff engaged in protected opposition nor was he opposing any unlawful practice. Further, there were legitimate grounds for Plaintiff's adverse employment action as provided above.

Third Cause of Action, Violation of the New Mexico Civil Rights Act ("NMCRA") NMSA 1978, § 41-4A-3: The NMCRA does not apply to allegations that arise from an employee's employment with a public employer. Plaintiff's claims about retaliation after he left LCSO all concerned information known to LCSO from investigations into his employment conduct. NMSA 1978, § 50-12-1 (1995) also provides immunity to employers asked to provide good faith comments about a former employee's job performance including the City of Hobbs nor is there any relief available under federal law as applied through the interstitial approach or in New Mexico precedent. Plaintiff is also not a member, nor has he claimed membership in a protected class to support equal protection claims.

Fourth Cause of Action, First Amendment 42 U.S.C. § 1983 Municipal Liability: Plaintiff cannot prevail on First Amendment retaliation municipal liability claims, because there is no underlying First Amendment violation nor is there a policy or widespread custom that caused such a violation.

Plaintiff's retaliation claim related to his post-resignation allegations are not actionable under the First Amendment.

Finally, Plaintiff cannot prove a policy or widespread practice of unlawful retaliation against LCSO employees under the First Amendment or that the County acted with deliberate indifference to his First Amendment rights against retaliation.

## IV. FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

**A. Stipulated Factual Contentions.**

The parties agree to the following facts listed separately below:

1. None

**B. Contested Material Facts.**

**1. Plaintiff's Contentions:**

a) At the time he spoke out, Plaintiff reasonably believed in good faith that Defendant was discriminating against Ahmaad White based on race.

b) At the time he spoke out, Plaintiff reasonably believed in good faith that Undersheriff Michael Walker had driven while intoxicated.

c) At the times Plaintiff suffered adverse employment action, he was performing his job in a way that was consistent with the Board's legitimate expectations.

d) Defendant subjected Plaintiff to adverse employment actions.

e) Defendant acted with retaliatory motive when it subjected Plaintiff to adverse employment action.

**2. Defendant's Contentions:**

a) Following an internal investigation, LCSO Deputy Chief Fernandez Jimenez concluded that Plaintiff continued to exhibit animosity toward Investigator Jurado after her prior report of his bullying behavior. Based on those findings, Undersheriff Walker issued Plaintiff a verbal reprimand on March 4, 2022.

b) In June 2022, LCSO received complaints from Phoenix House Executive Director Gretchen Koether and personnel from the Lea County Child Advocacy Center ("CAC").

c) CAC employees alleged that Plaintiff behaved inappropriately during a safehouse interview of a child victim of sexual assault, disregarded their attempts to explain why his conduct was inappropriate, and treated CAC personnel unprofessionally.

d) Following an internal investigation, LCSO issued Plaintiff a write-up.

e) On June 11, 2022, District Attorney ("DA") Dianna Luce of the Fifth Judicial District Attorney's Office raised significant concerns regarding Plaintiff's professional conduct and investigative work.

f) DA Luce's complaint and subsequent ADA interviews further alleged that Plaintiff repeatedly failed to attend mandatory court proceedings and pretrial interviews despite receiving proper notice, failed to produce discovery and evidence in a timely manner, and missed important reporting deadlines. Consequently, Plaintiff's conduct reportedly hindered and delayed the prosecutions of homicide and other criminal investigations.

g) Plaintiff further admitted informing a homicide victim's family that the District Attorney's Office was responsible for delays in obtaining arrest warrants. Due to Plaintiff's reported false allegations with the victim's family, the family posted multiple billboards in the area accusing the DA's Office of refusing to prosecute the case.

h) Prosecutors reported that Plaintiff failed to provide critical evidence and recordings despite repeated requests, delayed the submission of DNA evidence for testing, failed to complete necessary investigative follow-up, and repeatedly missed hearings and pretrial interviews.

i) Plaintiff resigned on October 20, 2022 after receiving notice of his impending demotion to a deputy position following the release of the report concerning the Phoenix House and CAC allegations.

j) After Plaintiff resigned, Sergeant Grady discovered that he failed to complete reports in thirteen criminal investigations including in cases dating back to 2019.

k) During a subsequent third-party investigation conducted by attorney Cody Rogers into whether Undersheriff Walker drove drunk, LCSO personnel and other witnesses reported information indicating Plaintiff had interfered with the investigation.

l) Plaintiff admitted contacting several witnesses and discussing the allegations with them despite being aware of policies restricting such conduct during investigations.

m) During the investigation, witnesses reported that Plaintiff was known for acting inappropriately and making inappropriate comments of a sexual nature with female coworkers.

n) Following witness reports concerning Plaintiff's alleged interference with the Walker investigation, Chief Jimenez concluded that Plaintiff's reported conduct was substantiated and that he committed multiple violations of County policies including those prohibiting harassment, stalking, and intimidation of coworkers and witnesses.

o) After the completion of investigations of the complaints from Investigator Jurado, the CAC and Phoenix House, and the Walker drunk driving investigation and Sheriff Helton's receipt of DA Luce's verbal complaint, Undersheriff Walker recommended Plaintiff's demotion from investigator to deputy. Sheriff Helton approved a Notice of Intent to Discipline, which Plaintiff received on September 29, 2022. Plaintiff later received a formal Notice of Demotion on October 14, 2022.

p) Records further indicated that neither Sheriff Helton nor Undersheriff Walker could have retaliated against Plaintiff during Mr. White's employment, because neither were involved in any decision concerning White's hiring since withdrew before reaching the interview stage.

q) The record reflects multiple independent complaints from coworkers, prosecutors, external public and non-profit agencies, supervisors, and witnesses concerning Plaintiff's workplace conduct, investigative performance, professional interactions, and conduct during internal investigations. Those complaints properly resulted in repeated disciplinary actions, a demotion, a recommendation for termination, and Plaintiff's resignation before he could be terminated.

## V. APPLICABLE LAW

**A. Do the parties agree which law controls the action?**

Yes

**If yes, identify the applicable law:** New Mexico law applies to Plaintiff's state claims including the New Mexico Whistleblower Protection Act, the New Mexico Human Rights Act, and through the interstitial analysis of the Article II, Section 17 speech and Article II, Section 18 equal protection claims raised through the New Mexico Constitution and the New Mexico Civil Rights Act claims which applies federal law to both claims where no such claims exist under New Mexico law; federal law applies to Plaintiff's federal claims including the 42 U.S.C. § 2000e claims raising Title VII of the Civil Rights Act and the First Amendment municipal liability claims.

## VI. CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

1. Plaintiff

2. Defendant

a) Article II, Section 4 of the New Mexico Constitution is not an enforceable independent claim, and is not actionable under the NMCRA.

b) Plaintiff does not assert nor can he prove membership in a protected class to trigger Article II, Section 18 equal protection clause under the New Mexico Constitution or NMCRA.

c) Post employment conduct is not recognized as actionable under the New Mexico Human Rights Act, the New Mexico Whistleblower Protection Act, the First Amendment, or Title VII of the Civil Rights Act.

d) The NMCRA prohibits individuals who were employed by a public body from raising NMCRA claims that arising from their employment with the public body under NMSA 1978, § 41-4A-3(D) (2021).

e) There is no causation to support First Amendment, Title VII, or NMHRA claims for retaliation, discrimination, or hostile work environment, because Plaintiff's discipline was not a substantial motivation for his discipline.

f) Plaintiff did not raise a public concern, nor did he raise protected conduct amounting to whistleblowing conduct under the First Amendment, Title VII, the NMHRA, and the NMWPA.

g) The investigative conclusions underlying Plaintiff's discipline demonstrated legitimate and non-retaliatory grounds for the discipline.

## VII. MOTIONS

**A. Pending Motions:**

None.

**B. Motions Which May Be Filed:**

1. Plaintiff: Motions in limine, motion to permit remote testimony by Ivonne Etter.

2. Defendant: motions in limine; potential motion to permit remote testimony.

The parties' motions are due by August 21, 2026. The responses to the motions are due by August 28, 2026.

## VIII. DISCOVERY

**A. Has discovery been completed?**

Yes

**B. Are there any discovery matters of which the Court should be aware?**

None.

## IX. ANTICIPATED WITNESSES

*Each party is under a continuing duty to supplement this list and the description of anticipated testimony. This does not, however, apply to a rebuttal witness. Indicate if the witness will testify in person or by deposition and include a brief description of the anticipated testimony. If the testimony is by deposition, identify the deposition by page number and line number. A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.*

**A. Plaintiff's Witnesses:**

1. Plaintiff will call or have available at trial the following witnesses:

   a) Zane Brown: will testify in-person about almost all allegations in the operative complaint.

   b) Robert Blanchard: will testify in-person about Defendant's efforts to prevent Plaintiff from gaining employment at the Hobbs Police Department, and how Blanchard was punished by Defendant for objecting to Defendant's illegal or improper actions.

   c) Joe Clark: will testify in-person about statements made by Helton and Dianna Luce about Plaintiff, and ongoing efforts by LCSO and the District Attorney's Office to force Plaintiff out of law enforcement. Will also testify about Plaintiff's job performance and overall competence as an investigator.

d) Andy Dominguez: will testify in-person about Walker's intoxication, and how he was not interviewed during LCSO's purported investigation into Walker's drunk driving.

e) Jeremy Grady: expected to testify in-person about Plaintiff's job performance, the investigations he was ordered to perform related to Plaintiff, and statements he made to Plaintiff about LCSO's disciplinary decisions.

f) Jeannette Sandoval: expected to testify in-person about the complaints made against Plaintiff, Plaintiff's job performance, Defendant's blackballing of Plaintiff, and LCSO's custom or practice of punishing employees who object to, complain about, or refuse to participate in wrongful conduct by sheriff's office officials.

g) Karina Tello: expected to testify in-person about Walker's intoxication and the investigation performed by Cody Rogers.

h) Ivonne Etter: expected to testify via video about Walker's role at the Child Advocacy Center, and a meeting he had with Selena Savell and Laura Lucero prior to their complaining about Plaintiff.

i) Chan Kim: Will testify in-person about Helton's animosity towards Plaintiff, Helton and Walker's favoritism towards Diana Jurado, and Helton and Walker's practice of sweeping misconduct by people they like under the rug while punishing people they dislike personally.

j) Aaron Rodriguez: expected to testify in-person about the complaint he and Plaintiff made about Walker's drunk driving, Helton's refusal to talk to him

about the Walker investigation, and Helton's outburst about Plaintiff at the UPS store.

k) Ahmaad White: expected to testify in-person about statements made to him by Jurado Garcia and Corey Helton related to Plaintiff.

2. Plaintiff may call the following witnesses:

a) Billy Martinez: expected to testify in-person about statements Helton made during Plaintiff's application process with Truth Energy Services.

b) Jeremy Shimmer: expected to testify in-person about his role in the investigations of Plaintiff.

c) Jesee Gonzales: expected to testify in-person about his encounter with Helton during the time Plaintiff was employed at UPS.

d) Alvin Mattocks: expected to testify in-person about statements Helton made related to Plaintiff's potential employment at the Hobs Police Department.

e) Mike Tovar: expected to testify in-person about LCSO's custom or practice of punishing employees who object to, complain about, or refuse to participate in wrongful conduct by sheriff's office officials

f) Vicente Garcia: expected to testify in-person about LCSO's custom or practice of punishing employees who object to, complain about, or refuse to participate in wrongful conduct by sheriff's office officials.

**B. Defendant's Witnesses:**

1. Defendant will call or have available at trial the following witnesses:

a) Undersheriff Michael Walker

Undersheriff Walker is expected to testify concerning the events leading to Plaintiff's disciplinary investigations he was a part of as well as concerns about Plaintiff's employment conduct, his

communications with LCSO personnel and others related to Plaintiff's allegations and discipline, and his understanding of the bases for Plaintiff's discipline.

b) LCSO Sheriff Corey Helton

Sheriff Helton is expected to testify concerning the events leading to Plaintiff's disciplinary investigations he was a part of as well as concerns about Plaintiff's employment conduct, his communications with LCSO personnel and others related to Plaintiff's allegations and discipline, and his understanding of the bases for Plaintiff's discipline.

c) LCSO Investigator Diana Jurado (formerly Garcia)

Investigator Jurado is expected to testify regarding her work relationship with Plaintiff and perceptions of him, his conduct leading to her human resource complaints against him, his observed conduct following the complaints, issues observed with his investigative practices and communications, statements made to her after she submitted these complaints, her participation in investigations concerning Plaintiff and LCSO personnel, and the basis for her request for demotion.

d) Former LCSO Cpl. Travis Hobbs

Cpl. Hobbs is expected to testify concerning background check procedures for new LCSO applicants, his participation in the background checks into Ahmaad White, his work relationship with Plaintiff and familiarity with Plaintiff's work product, and his participation in an interview following a complaint from Diana Garcia.

e) Fifth Judicial District Attorney Dianna Luce

DA Luce is expected to testify concerning her complaints to LCSO concerning Plaintiff's investigative performance and inappropriate behavior and the events underlying these reports as relayed to her by ADAs Kirtley and Williams and the events underlying these reports. DA Luce is also expected to testify concerning her own interactions with Plaintiff and concerns about his behavior and investigative work as a detective.

f) LCSO Captain Victor Hernandez

Captain Hernandez is expected to testify concerning his investigation into allegations concerning personnel from the Phoenix House and Lea County Child Advocacy Center received Phoenix House Executive Director Gretchen Koether regarding Plaintiff's inappropriate behavior with children subject to forensic interviews as noted above. Captain Hernandez is further expected to testify to the substance of the interviews he conducted, who was present, his evidentiary findings, and reports to LCSO administrative personnel concerning the same.

g) LCSO Chief Deputy Fernando Jimenez

Chief Deputy Jimemez is expected to testify concerning his work with, if any, and perceptions of Plaintiff, Jimenez' investigation of a complaint raised by Aaron Rodriguez against Undersheriff Walker as well as a complaint against raised by district attorney's office personnel. Chief Deputy Jimenez is expected to testify as to the details of his investigations and related evidentiary findings in documents and interviews, his related communications with LCSO administrative personnel, and the County violations Plaintiff committed as noted in his findings.

h) Forensic Interviewer Laura Lucero

Ms. Lucero is expected to testify regarding her interactions with Plaintiff and his observed interactions with others at the Lea County Child Advocacy Center. Ms. Lucero is further expected to testify concerning Plaintiff's unprofessional and demanding comments with children, particularly the incident at issue in the complaint against him submitted to LCSO. Ms. Lucero is further expected to testify concerning her participation in a related investigation of Plaintiff.

i) Attorney Cody Rogers

Ms. Rogers is expected to testify concerning her external investigation of Aaron Rodriguez' allegations against Undersheriff Walker concerning drunk driving allegations, her investigative report and findings, evidence she reviewed, interviews she conducted, and her investigative findings and discussions with LCSO administration concerning the same.

2. Defendant may call the following witnesses:

a) Plaintiff Zane Brown

Plaintiff is expected to testify concerning the events underlying his LCSO discipline and complaints raised by and against him during his employment and related investigations and communications he has had with LCSO personnel and external personnel involved in these events, and his conduct underlying each investigation and complaint, and damages arising from his allegations. Plaintiff is further expected to testify concerning his friendship with current and former LCSO personnel and witnesses implicated in the complaints and investigations leading to his discipline.

b) Ahmaad White

Mr. White is expected to testify concerning the circumstances of his application to LCSO, information he reported during the application process, changes he made to his application, and the monetary basis for his withdrawal as an LCSO candidate. Mr. White is further expected to testify concerning his friendship with Plaintiff, Chris Henderson, and Aaron Rodriguez and discussions had concerning LCSO personnel.

c) LCSO Chief Deputy Jeremy Grady

Chief Deputy Grady is expected to testify concerning his supervision over Plaintiff while Plaintiff was an investigator and perceptions concerning Plaintiff's work and professional relationships with other LCSO personnel. Chief Deputy Grady is further expected to testify concerning evidence Plaintiff failed to turn over to the district attorney's office requiring his intervention, his communications with DA Dianna Luce over her issues with Plaintiff, Plaintiff's failure to complete supplemental reports or attend pretrial interviews, and his involvement and understanding of the discipline and bases for Plaintiff's discipline over these issues. Chief Deputy Grady is also expected to testify regarding other issues with the district attorney's office concerning Plaintiff's handling of evidence and the basis for non-documentation of other prior complaints from the DA's office.

d) LCSO Investigator Jeanette Sandoval

Ms. Sandoval is expected to testify regarding her work relationship with Plaintiff, personal friendship with Plaintiff, perceptions about Plaintiff related to LCSO, his communications with her regarding complaints against LCSO personnel, her participation in investigations into LCSO personnel and Plaintiff's conduct and inconsistencies in her statements provided therein, and her understanding of Plaintiff's investigative work and communications with others during investigations.

e) LCSO Public Information Officer Aileen Vizcarra

Ms. Vizcarra is expected to testify concerning her observations of Plaintiff's words and conduct during his LCSO employment, her participation in investigations concerning his conduct and those of LCSO personnel, and communications with LCSO personnel and others concerning Plaintiff's problematic conduct and related investigations that arose concerning the same.

f) County Manager Mike Gallagher

Mr. Gallagher is expected to testify regarding his understanding of the events in Plaintiff's complaint, Plaintiff's discipline and the basis for the discipline, and the events supporting Plaintiff's discipline as he understood them from LCSO personnel.

g) Aaron Rodriguez

Mr. Rodriguez is expected to testify concerning his relationship with Plaintiff, Chris Henderson, and Ahmaad White as well as communications with Plaintiff concerning Undersheriff Walker, LCSO personnel, and allegations against Walker leading to the internal and external investigations of the same, the basis for the allegations he raised, his participation in the investigations of the same, and his communications with LCSO concerning the complaint against Walker.

h) Lea County Commissioner Jonathan Sena

Commissioner Sena is expected to testify concerning an email he received from Chris Henderson concerning Rodriguez' complaint against Undersheriff Walker.

i) Chris Henderson

Mr. Henderson is expected to testify concerning his relationship with Plaintiff, Chris Henderson, Aaron Rodriguez, and Ahmaad White as well as communications with each concerning Undersheriff Walker, LCSO personnel, and allegations against Walker leading to the internal and external investigations of the same, the basis for the allegations he raised, his participation in the investigations of the same, and his communications with LCSO concerning the complaint against Walker.

j) Former Eunice Police Department Officer Karina Tello

Ms. Tello is expected to testify regarding her communications with Plaintiff shortly after Diana Jurado's birthday gathering, Plaintiff's accusations against her, threats she reported Plaintiff made against Undersheriff Walker, her work relationship with Plaintiff, and her participation in investigations concerning Walker.

k) LSCO Deputy Jasmine Sanchez

Deputy Sanchez is expected to testify regarding her work relationship and friendship with Plaintiff, her perceptions of Plaintiff, threats she reported Plaintiff made against Undersheriff Walker while present with Jeannette Sandoval and other allegations concerning Diana Jurado's birthday gathering related to bartering against Plaintiff's own discipline, her participation in investigations concerning Walker and Plaintiff.

l) Claudia Regino

Ms. Regino is expected to testify concerning her attendance at Diana Jurado's birthday gathering and whether Undersheriff Walker appeared to be intoxicated or not.

m) LCSO Investigator David Ibarra

Investigator Ibarra is expected to testify concerning his work relationship with Plaintiff and his perceptions of the quality of Plaintiff's work. Ibarra is further expected to testify concerning jokes Plaintiff made concerning domestic violence during a domestic violence conference. Investigator Ibarra is further expected to testify concerning a FARO scan that was to be performed by Plaintiff, Plaintiff's lack of availability or contact during investigations, and negative comments he heard Plaintiff speak about concerning Diana Jurado along with an attempt to exclude her from a homicide investigation. Finally, Investigator Ibarra is expected to testify concerning his participation in related investigations of Plaintiff.

n) LCSO Deputy Clara Marquez

Deputy Marquez is expected to testify regarding her work relationship with Plaintiff and perceptions of him, a conversation she reported in an investigation following Diana Garcia's complaint against him, and her participation in the investigation.

o) Judge Kirk Williams

Judge Williams is a former assistant district attorney with the Fifth Judicial District Attorney's Office. Judge Williams is expected to testify concerning a complaint filed against Plaintiff by District Attorney Dianna Luce. Judge Williams is also expected to testify regarding the Zachary Gonzales investigation in which he traveled with Plaintiff to Seminole, Texas to conduct a recorded interview of a subject. After advising Plaintiff to be careful with how he wrote up the statement, Plaintiff reportedly included two promises in the criminal complaint allegedly from two separate occasions after the interview which was untrue and beyond Judge Williams' former authority to make. Judge Williams is further expected to testify concerning his review of the recordings and corrections that had to be made in the criminal complaint as well as his participation in an investigation into these incidents.

p) Fifth Judicial District Attorney's Office Assistant District Attorney Megan Kirtley

ADA Kirtley is expected to testify regarding her struggles with Plaintiff while he was an investigator in which he missed three pretrial interviews without notice leading to suppression of evidence in a case, failing to turn in a video for deposition, and his general unavailability for contact and failure to produce important evidence. ADA Kirtley is further expected to testify regarding Plaintiff's insults against her and permission he sought for a warrant he admitted would not be legal as well as her participation in an investigation into these incidents.

q) Nurse Becky Kesner

Ms. Kesner is expected to testify concerning comments she heard Plaintiff concerning why he could see hitting his wife when he argues with her to put her in her place during a domestic violence conference. Ms. Kesner is further expected to testify concerning her participation in an investigation into the same.

r) Forensic Interviewer Selena Savell

Ms. Savell is expected to testify concerning Plaintiff's use of vulgar and unprofessional language while speaking with a child interviewed at the Lea County Child Advocacy Center including demanding the child speak with him and yelling at her and telling her she had no choice but to speak with him, and taunting her for being taken into protective state custody as well as other humiliating comments he made to another forensic investigator Laura Lucero in Savell's presence. Ms. Savell is also expected to testify concerning her participation in a corresponding investigation of Plaintiff's conduct.

s) Blanca Perez

Ms. Perez is expected to testify concerning Plaintiff's unprofessional demeanor during a conference concerning domestic violence in San Francisco and comments about why women deserve to be in and why someone's ex-husband in a case would beat up his wife and why he might be motivated to hit his own wife. Ms. Perez is further expected to testify concerning her participation in a corresponding investigation of Plaintiff.

t) LCSO Captain Vicente Garcia

Captain Garcia is expected to testify concerning Plaintiff's attempts to discuss an internal affairs investigation against Plaintiff concerning the Undersheriff Walker investigation and his related participation in the investigation.

u) LCSO Chief Deputy Jonathan Martinez

Chief Deputy Martinez is expected to testify regarding his receipt of a complaint from Diana Garcia concerning Plaintiff, his assigned to investigate from Sergeant Grady, his investigative findings and interviews, details of his investigative report, and findings of Plaintiff's bullying Investigator Garcia. Chief Deputy Martinez is further expected to testify regarding information he reported to LCSO administration, his working experience with Plaintiff, and complaints he has heard concerning Plaintiff.

v) LCSO Deputy Vivian Martinez

Deputy Martinez is expected to testify concerning her working relationship with Plaintiff, Plaintiff's approach asking if she would be interested in taking a position in the LCSO Criminal Investigations Division ("CID") following Diana Jurado's request to return to patrol and her understanding of Garcia's strong desire to work in CID.

w) Michelle Kemp

Ms. Kemp attended Diana Jurado's birthday gathering and reported Plaintiff's "bad blood" with Undersheriff Walker to Sheriff Helton during a preliminary investigation.

x) LCSO Vehicle Maintenance Officer Scott Wimberly

Mr. Wimberly is expected to testify regarding his actions and observations during Diana Jurado's birthday gathering where Undersheriff Walker was present. Mr. Wimberly is expected to testify to his perception of Undersheriff Walker's lack of intoxication and conduct throughout the gathering.

y) LCSO Sergeant Sonia Estrada

Sergeant Estrada is expected to testify concerning her work with and perceptions of Plaintiff, disparaging conversations she heard Plaintiff report concerning Diana Jurado which she reported

to Chief Deputy Martinez and Sergeant Grady. Sergeant Estrada is further expected to testify regarding her participation in a related investigation following Investigator Garcia's complaint.

z) Officer Andy Dominguez

Officer Dominguez is expected to testify concerning his actions and observations during Diana Jurado's birthday gathering where Undersheriff Walker was present as well as work with Plaintiff, if any, and his perceptions of Plaintiff.

aa) Executive Director Gretchen Koether

Ms. Koether is expected to testify regarding complaints she received from subordinate employees concerning Plaintiff's words and conduct regarding comments about domestic abuse against women.

bb) Investigator Ana Santana

Ms. Santana is expected to testify to conversations she heard about Plaintiff at the Lea County Child Advocacy Center in the interview observation room with Laura Lucero and Selena Savell. Ms. Santana is also expected to testify concerning Plaintiff's comments to a child to be interviewed to come over to talk to them, that she had to speak with him, and the fact of traumatizing discussions about the child's custody between Plaintiff and others occurring in the child's presence.

## X. TRIAL PREPARATION

### A. Exhibits.

Counsel shall file with the Court, and provide to opposing counsel, a proposed exhibit list no later than August 14, 2026. Objections to exhibits must be filed no later than August 21, 2026. Counsel for each party shall file with the Court a complete list of all objections to the exhibits offered, specifying the Rule of Evidence or other legal authority upon which an objection is based. The Court expects the parties to confer over all trial exhibits and endeavor to resolve any disputes prior to the Pre-Trial Conference. This does not apply to rebuttal exhibits that cannot be anticipated before trial.

When filing their final exhibit lists with the Court prior to trial, the parties shall use the format included at the end of the Trial Notice. All exhibits must be marked before trial. Exhibits

must be marked numerically and identify the party offering the exhibit. The identification number or letter will remain the same whether the exhibit is admitted or not.

**B. Witness Lists.**

Each party's witness list must be filed with the Clerk and served on all parties by August 14, 2026. Indicate whether the witness is testifying by deposition or in person. If a witness is testifying by deposition, the offering party must mark the portions of the deposition testimony the party intends to present. Objections to any witnesses or to the use of deposition testimony are due no later than August 21, 2026. For objections to deposition testimony, the objecting party must mark those portions of the requested deposition testimony to which the party objects. Marking must comply with D.N.M.LR-Civ. 10.6. The Court expects the parties to confer about any disputes and endeavor to resolve them, if possible, prior to the Pre-Trial Conference.

**C. Voir Dire.**

1. The Court will allow each party to conduct forty-five (45) minutes of voir dire.

**D. Jury Instructions and Verdict.**

**1. In General.** The parties must confer about proposed jury instructions and then submit **Joint** Proposed Jury Instructions. The Court expects that disputed instructions will be minimal, as parties are expected to agree on stock instructions and should avoid submitting to the Court separate requests for the same stock instructions. The proposed instructions that the parties must submit to the Court should include those which set forth the elements and definitions of the claims or charges, and the elements and any definitions of any defenses. The proposed instructions must include citations to the legal authority relied upon.

**2. Submission of Proposed Instructions.** The parties must submit one mutually approved set of jury instructions by August 21, 2026. For those instructions the parties were unable to agree upon, each party must submit its own proposed instructions at the same time as submission of the mutually agreed instructions.

**3. Form of Instructions.**

a. Submit sets of double-spaced instructions as follows:

one (1) set of originals without citations and headed "Instruction No. ___"; and

one (1) set with citations and numbered accordingly, one of which will be filed.

b. If requested, also submit all instructions in a format compatible with MS Word. Please refer to the procedures, available on our web site, for electronically submitting proposed text.

c. Submit no more than one instruction to a page.

d. All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction.

e. Submit a cover sheet on all sets of instructions.

**4. Deadlines for Submitting Instructions.**

a. Joint proposed instructions shall be filed by August 21, 2026.

b. Supplemental unanticipated jury instructions may be submitted at trial.

**E. Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will be read to the jury panel during jury selection. The statement must be submitted to the Court fourteen (14) days before jury selection.

## XI. OTHER MATTERS

**A. Settlement Possibilities.**

1. The possibility of settlement in this case is considered:

___x___ Poor ______ Fair ______ Good ______ Excellent ______ Unknown ______

2. Do the parties have a settlement conference set with the assigned Magistrate Judge? No

Would a follow-up settlement conference be beneficial? ______ Yes ___x___ No

3. Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial?

If yes, please identify:

Plaintiff wishes to conduct a settlement conference or private mediation.

If no, explain why not: ____________________________________________

**B. Length of Trial and Trial Setting.**

1. This action is a jury trial.

2. The case is set for trial on September 28, 2026.

3. The length of trial is ten (10) days.

## XII. EXCEPTIONS

As noted above.

## XIII. MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval. The pleadings will be deemed merged herein. The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this 7th day of August 2026.

WALDO GUBERNICK
LAW ADVOCATES LLP

*<u>/s/ Approved via email 7/24/26</u>*
BENJAMIN GUBERNICK
New Mexico State Bar No. 145006
CURTIS WALDO
New Mexico State Bar No. 163604
717 Texas St. Suite 1200
Houston, TX 77002
(346) 341-0169
ben@wglawllp.com
curtis@wglawllp.com
*Attorneys for Plaintiff*

MYNATT SPRINGER P.C.

BENJAMIN J. YOUNG
New Mexico Bar No. 144702
HALEY R. GRANT
New Mexico Bar No. 145671
P.O. Box 2699
Las Cruces, NM 88004-2699
(575) 524-8812
bjy@mynattspringer.com
hrg@mynattspringer.com
*Attorneys for Defendants*

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE