**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

**ZANE BROWN,**

**Plaintiff,** **No. 2:23-CV-00355-DHU-GJF**

**v.**

**LEA COUNTY BOARD OF**
**COUNTY COMMISSIONERS,**

**Defendant.**

**DEFENDANT LEA COUNTY BOARD OF COUNTY COMMISSIONERS' MOTION IN LIMINE TO EXCLUDE REFERENCES, EVIDENCE, AND TESTIMONY CONCERNING AHMAAD WHITE'S COUNTY EMPLOYMENT APPLICATIONS AND PLAINTIFF'S RELATED ALLEGED REPORT OF RACIAL BIAS**

Defendant Lea County Board of County Commissioners (the "County") by and through counsel of record MYNATT SPRINGER P.C. (Blaine T. Mynatt, Benjamin J. Young, and Haley R. Grant) hereby submits this Motion in Limine to Exclude References, Evidence, and Testimony concerning Ahmaad White's Employment Applications and Plaintiff's related alleged Report of Racial Bias ("Motion"). Plaintiff counsel's position was sought via email on August 21, 2026, and they oppose the Motion.

## INTRODUCTION

The Court must exclude all references, exhibits, and testimony concerning Plaintiff's alleged report of purported racial bias against Ahmaad White, an African American candidate for employment with the Lea County Sheriff's Office ("LCSO"). Neither the First Amendment nor the New Mexico Whistleblower Protection Act ("NMWPA") recognize Plaintiff's alleged report of ostensible racial bias. Thus, any discussions of White's LCSO employment application or

process have no relevance to Plaintiff's claims under Fed. R. Evid. 401 and 402. [1] The same would also be unfairly prejudicial to the County and would confuse the issues of liability and mislead the jury with irrelevant facts that cannot support any claim under Fed. R. Evid. 403 and would constitute impermissible Fed. R. Evid. 404(b) character evidence of a prior act or wrong.

## ARGUMENT

### I. Plaintiff's alleged report concerning White was not a matter of public concern nor raised in good faith under the First Amendment or NMWPA. Thus, the Court must exclude all corresponding references, evidence, and testimony under Fed. R. Evid. 401, 402, 403, and 404(b).

On Plaintiff's own employment application, he attested to his knowledge of the consequences of any misrepresentations and omissions on his employment application. As the investigator who performed White's LCSO employment background investigation, reviewed White's initial and corrected employment application, and who heard directly from White as to the corrections on his application concerning disqualifying misrepresentations concerning his prior drug use and distribution, Plaintiff knew there was a legitimate reason to conduct an additional review of White's prior Hobbs Police Department ("HPD") employment application and that the directive to do so was not discriminatory. The question of whether speech constitutes a matter of public concern is a legal issue for the Court's decision.[2] White's dishonesty in his initial 2021 LCSO employment application clearly prompted a reasonable directive to further scrutinize his credibility in another employment application. Mr. White had already demonstrated issues with his candor during the LCSO application process. The County maintains that Plaintiff never raised

[1] The County will also be separately raising another motion addressing jurisdictional flaws in Plaintiff's Title VII and New Mexico Human Rights Act claims which preclude a jury's consideration of the claims.
[2] *See Dixon v. Kirkpatrick*, 553 F.3d 1294, 1304 (10th Cir. 2009) (Whether "speech is a matter of public concern is a legal issue, to be determined by the district court as a matter of law.").

any concern with LCSO about White's application until this lawsuit, but even if Plaintiff had, he would have known such a concern was false and lacked any reasonable basis in fact.

Public employees "enjoy [] First Amendment rights, but not to the same extent as a private citizen."[3] However, ""[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services.""[4] "When government employees speak out, they can express views that contravene governmental policies or impair the proper performance of governmental functions." *Id*. A plaintiff must prove, among other things, the following *Garcetti* factors to prevail in a First Amendment retaliation claim against a public employer:

(1) whether the speech was not made pursuant to an employee's official duties;
(2) whether the speech addressed a matter of public concern.[5]

Courts "narrowly interpret the term "public concern.""[6] "A public concern exists when the content addresses a topic "of interest to the community." *Id*. The public concern analysis requires courts to "focus on the motive of the speaker and whether the speech *is calculated to disclose misconduct* or merely deals with personal disputes and grievances unrelated to the public's interest."[7] "[I]f [a court] find[s] that the employee's personal interest as an employee predominates over any interest he might have as a member of the general public, [courts] are not to intercede."[8] "To determine whether the[] complaints involved a matter of public concern, [courts] consider the content, form, and context."[9] "[A] public concern exists only when the speech contains enough specificity to help

---

[3] *Seifert v. Unified Gov't of Wyandotte Cty.*, 779 F.3d 1141, 1151 (10th Cir. 2015).
[4] *Brown v. City of Tulsa*, 124 F.4th 1251, 1266 (10th Cir. 2025).
[5] *Tufaro v. Okla. ex rel. Bd. of Regents of the Univ. of Okla*., 107 F.4th 1121, 1138 (10th Cir. 2024).
[6] *Rogers v. Riggs*, 71 F.4th 1256, 1259 (10th Cir. 2023).
[7] *Trant v. Okla*., 754 F.3d 1158, 1165 (10th Cir. 2014).
[8] *Tufaro*, 107 F.4th at 1138.
[9] *Rogers*, 71 F.4th at 1259.

the public evaluate governmental conduct." *Id*. at 1261. Courts "assume that deliberately or recklessly false statements by public employees are either unprotected by the First Amendment or, at least, that such intentional falsity would weigh heavily against protection."[10] Plaintiff's statements, had he raised them, were knowingly false and could therefore not implicate a First Amendment public concern.

Like the First Amendment, Section 10-16C-3(A) "prohibits a public employer from taking retaliatory action against a public employee who "communicates to the public employer or a third party" conduct that the "employee believes in good faith" to be an "unlawful or improper act.""[11] Under the NMWPA, an unlawful or improper act is an employer's practice, procedure, act or omission which 1) violates federal, state, or a political subdivision's laws, regulations, administrative rules; 2) constitutes malfeasance in public office; or 3) constitutes gross mismanagement, a waste of funds, an abuse of authority, or a substantial and specific public danger.[12] ""Good faith" means that a reasonable basis exists in fact as evidenced by the facts available to the public employer."[13] An NMWPA whistleblower who claims retaliation must "believe[e] that the public interest overrides the interest of the organization that individual services[.]"[14]

---

[10] *Moore v. City of Wynnewood*, 57 F.3d 924, 932-933 (10th Cir. 1995) ("[A]bsent proof of false statements *knowingly or recklessly* made by him, a teacher's exercise of his right to speak on issues of public importance" was protected.) (emphasis added)); *compare Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998) ("[D]eliberately or recklessly false statements do not receive First Amendment protection, [but the d]efendants have not shown that [the p]laintiff knew or should have known his statements were false.").
[11] *Lerma v. State*, 578 P.3d 1111, 1117 (N.M. 2025) (quoting N.M. Stat. Ann. 10-16C-3(A) (2010)).
[12] N.M. Stat. Ann. § 10-16C-2(E) (2010).
[13] N.M. Stat. Ann. § 10-16C-2(A) (2010).
[14] *Lerma*, 578 P.3d at 1119; N.M. Stat. Ann. § 10-16C-2(E) (2010).

"[C]ommunications that do not pertain to a matter of public concern are not protected [NMWPA] whistleblowing activity."[15] Courts must distinguish between NMWPA ""whistleblowing" that benefits the public by exposing unlawful and improper actions [] from communications regarding personal personnel grievances that primarily benefit the individual employee."[16] "[P]ersonal disagreements with legitimate managerial decisions do not demonstrate [] any [] kind of activity that could be considered a whistleblowing disclosure." *Id*. Without a good faith basis to support any racial bias concern and as a close friend of White's at the time of his application, Plaintiff did not raise a matter of public concern that is actionable under the First Amendment.[17] As Plaintiff conceded during the County's motion for summary judgment, White submitted an amended application for a deputy position to correct the misrepresentation, but LCSO never even disqualified White's from employment, and his application progressed to the interview phase.[18] White also withdrew his application citing his discontent with the posted pay.[19]

Plaintiff knew of White's application misrepresentation and was a friend of White's. Plaintiff's alleged complaint was not calculated to disclose any unlawful or improper act and raised no public concern under the First Amendment or the NMWPA.[20] Plaintiff knew of the legitimate reason to further probe White's employment application disclosures on another application.[21] White disclosed his prior employers and signed multiple attestations agreeing to permit his current

---

[15] *Lerma*, 578 P.3d at 1120.
[16] *Wills v. Bd. of Regents of the Univ. of N.M.*, 357 P.3d 453, 457 (N.M. Ct. App. 2015).
[17] *See id.*; *Dill*, 155 F.3d at 1202 ("[D]eliberately or recklessly false statements do not receive First Amendment protection[.]").
[18] *Compare* [Doc. 95, pg. 24, ¶¶ 117, 119] with [Doc. 97, pg. 16, ¶¶ 117, 119].
[19] *Compare* [Doc. 95, pg. 25, ¶ 123] with [Doc. 97, pg. 16, ¶ 123].
[20] *Compare* [Doc. 95, pg. 25, ¶ 128] with [Doc. 97, pg. 17, ¶ 128].
[21] *See Lerma*, 578 P.3d at 1119 (An NMWPA whistleblower who claims retaliation must "believe[e] that the public interest overrides the interest of the organization that individual services[.]"); N.M. Stat. Ann. § 10-16C-2(E) (2010).

and prior employers to freely disclose his prior employment information to LCSO.[22] The disqualifying consequences of a misrepresentation on the application were also spelled out on the document, including Plaintiff's own LCSO employment application, the deputy position description, and the County's HR policies.[23] Plaintiff thus did not act in good faith any unlawful or improper act committed by Corporal Hobbs or LCSO, and his report, if it existed would only amount to a disagreement with a managerial decision and not unlawful acts.[24]

**II. Plaintiff's alleged report of supposed racial bias would only have been made pursuant to his official duties and cannot support First Amendment or NMWPA retaliation. The Court must exclude all corresponding references, evidence, and testimony on Fed. R. Evid. 40, 402, 403, and 404 grounds.**

Plaintiff's alleged report of supposed racial bias related to his job responsibilities as an investigator conducting a background investigation, and he relayed this report to his chain of command and the LCSO official who assigned him the investigation.[25] Neither the First Amendment nor the NMWPA support Plaintiff's alleged reports, and the Court must exclude all discussions, evidence, and testimony concerning White as irrelevant and unfairly prejudicial. The County stands to suffer unfair prejudice at trial if the jury is permitted to hear wasteful and irrelevant discussions about Plaintiff's alleged report of racial bias against White.[26] Such allegations would also form impermissible Fed. R. Evid. 404(b) character evidence that the County acts with racial bias toward African Americans that would unfairly prejudice the County with a

---

[22] [Ex. A, White Application, BN 1099-1101, 1107, 1110-1113].
[23] [Ex. A, BN 1101, 1104]; [Ex. B, Brown Application, BN 598]; [Ex. D, Deputy Position Description, BN 1083-1086]; [Ex. E, BN 356, 382, 401 County HR Policies].
[24] *See Tufaro*, 107 F.4th at 1138 ("[I]f [a court] find[s] that the employee's personal interest as an employee predominates over any interest he might have as a member of the general public," the speech is unprotected.); *Wills*, 357 P.3d at 457 ("[P]ersonal disagreements with legitimate managerial decisions does not demonstrate abuse of authority or any other kind of activity that could be considered a whistleblowing disclosure.").
[25] [Ex. C, Investigator Position Description, BN 688-689].
[26] *See* Fed. R. Evid. 401, 402, 403.

jury. Given the presence of municipal liability claims, the Court would further have to conduct mini trials on Plaintiff's First Amendment allegations to determine whether they are sufficient in number and type. For claims that share no nexus with viable NMWPA or First Amendment claims, this would work a substantial waste of time essentially conducting multiple mini trials.

Under the first *Garcetti* element of a First Amendment retaliation claim, "If a [public] employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created."[27] If a public employee's speech "simply relates to public employment or concerns information learned in the course of public employment" the speech may still be private and protected.[28] "The question [] is not whether the speech was made during the employee's work hours, or whether it concerned the subject matter of his employment."[29]

"The critical question [] is whether the speech at issue is itself ordinarily within the scope of the employee's duties, not whether it merely concerns those duties."[30] Courts "ask whether the employee was performing the task they were paid to perform when they spoke."[31] An employee's unauthorized speech at issue inescapably invoke[s] *Garcetti*'s admonishment that a government employee's First Amendment rights do not invest them with a right to perform their jobs however they see fit."[32]

---

[27] *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018).
[28] *Timmins v. Plotkin*, 157 F.4th 1275, 1278 (10th Cir. 2025).
[29] *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008).
[30] *Lane*, 573 U.S. at 240.
[31] *Knopf*, 884 F.3d at 946.
[32] *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010) ("[P]rotecting unauthorized speech would result in judicial oversight of communications between and among government employees and their superiors in the course of official business and displacement of managerial discretion by judicial supervision.").

The Tenth Circuit "take[s] a broad view of the meaning of speech that is pursuant to an employee's official duties."[33] The "focus is on the *context* of the speech." *Id*. (emphasis in original). Courts "take a practical view of all the facts and circumstances surrounding the speech and employment relationship."[34] Courts must employ "a case-by-case approach looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties."[35] "Many facts may be relevant—the tasks in an employee's job description, the frequency with which the employee performs the task, the subject matter of the task, the recipient of the employee's speech, and any legal obligation to speak—but no one fact is determinative."[36] "Two factors suggest that an employee spoke as a private citizen rather than pursuant to job responsibilities: (1) the employee's duties did not involve reporting wrongdoing, and (2) the employee reported the wrongdoing outside the chain of command."[37] However, "even if not explicitly required as part of their day-to-day job responsibilities, an employee's statements are made pursuant to official duties *when they stem from and are the type of activities the employee is paid to perform*."[38] If the speech "reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."[39]

The First Amendment does not protect Plaintiff's statements made in his official duties as a public employee. Plaintiff was an investigator charged with conducting employment background

---

[33] *Tufaro*, 107 F.4th at 1138.
[34] *Knopf*, 884 F.3d at 946.
[35] *Tufaro*, 107 F.4th at 1138.
[36] *Timmins*, 157 F.4th at 1280.
[37] *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ*., 595 F.3d 1126, 1136-1137 (10th Cir. 2010).
[38] *Tufaro*, 107 F.4th at 1139 (emphasis added).
[39] *Brammer-Hoelter v. Twin Peaks Charter Acad*., 492 F.3d 1192, 1203 (10th Cir. 2007). "[S]peech pursuant to the employee's duty to report a particular activity is usually within that employee's official duties[.]" *Rohrbough*, 596 F.3d at 746-747.

investigations who complained about a superior, Corporal Hobbs', directive concerning a background check Plaintiff was charged with performing.[40] Plaintiff's complaint of racial bias stemmed from and was the type of activity that he was paid to perform, because his official duties logically included advising as to any concern about employment background investigations.[41] Assuming Plaintiff's made the report and it actually implicated racial bias or some unlawful or improper act, rather than a simple command to compare employment applications, the report is unprotected because it facilitated the performance of fair background investigations.[42] The County's Equal Employment Opportunity Policy also required Plaintiff to report concerns of race discrimination against candidates for employment.[43] Even if reporting misconduct by race discrimination by a superior was not something the County's EEO Policy required, "the [alleged] report was still made within [Plaintiff's] chain of command and the scope of his official duties."[44]

---

[40] *See Rohrbough*, 596 F.3d at 747 (Speech directed at an individual or entity within a[n] employee's chain of command is often found to be pursuant to that employee's official duties[.]"); *see generally Reinhardt*, 595 F.3d at1136-1137 ("Two factors suggest that an employee spoke as a private citizen rather than pursuant to job responsibilities: (1) the employee's duties did not involve reporting wrongdoing, and (2) the employee reported the wrongdoing outside the chain of command."); *compare Ellison*, 700 F. App'x at 829 (The allegations did "not suggest [the plaintiff] was speaking outside his chain of command. He was speaking to [a lieutenant] who had a higher rank, who completed his job performance report, and who [the plaintiff] identifie[d] in his appellate brief as "his superior."").

[41] *See Tufaro*, 107 F.4th at 1139.

[42] *See Brammer-Hoelter*, 492 F.3d at 1203 (If the speech "reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."); *compare Reinhardt*, 595 F.3d at 1136 ("Thus the fact that it was not expressly [the plaintiff]'s duty to report IDEA violation to NMPED is not dispositive on whether she was acting "pursuant" to her duties."). Plaintiff also did not report to anyone outside LCSO, and his alleged whistleblowing took place in the course of his normal job duties. *Compare Kakuska v. Roswell Indep. Sch. Dist.*, No. A-1-CA-36488, 2019 N.M. App. Unpub. LEXIS 327, *1-*4 (N.M. Ct. App. April 16, 2019) (unpublished) (An assistant superintendent's disagreement with an employee's proposed termination and disagreements with a pay scale and administration of a salary schedule were not protected by the NMWPA, because his duties included interpreting personnel policies, implementing wage and hour laws, and placing employees on the salary schedule.).

[43] [Ex. E, BN 351, County EEO Policy (The County must "provide equal employment opportunities to all individuals and shall not discriminate against any individual on the basis of race… This anti-discrimination policy *applies to all phases of the employment process*[]."); *compare id*.

[44] *Ellison v. Roosevelt Cty. Comm'rs*, 700 F. App'x 823, 830, 829 (10th Cir. 2017) (non-precedential) (The plaintiff officer was not obligated to report allegations of excessive force used by a fellow officer following an arrest, but the report was still made to a superior by an officer charged with enforcing lawful arrest); *Compare Kakuska*, No. A-1-CA-36488, 2019 N.M. App. Unpub. LEXIS 327, *1-*4.

Therefore, Plaintiff's complaint concerning White was neither an actionable public concern nor was the alleged speech uttered outside his official duties, and the Court must exclude these allegations as irrelevant and unfairly prejudicial without the support of the First Amendment or the NMWPA.

**CONCLUSION**

On the foregoing grounds, the Court must exclude all references to, evidence, and testimony concerning allegations of retaliation after Plaintiff resigned from LCSO.

Respectfully submitted,
MYNATT SPRINGER P.C.

BLAINE T. MYNATT
New Mexico Bar No. 9471
BENJAMIN J. YOUNG
New Mexico Bar No. 144702
HALEY R. GRANT
New Mexico Bar No. 145671
P.O. Box 2699
Las Cruces, NM 88004-2699
(575) 524-8812
btm@mynattspringer.com
bjy@mynattspringer.com
hrg@mynattspringer.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I certify that, on August 21, 2026, a copy of the foregoing pleading was served on the below counsel of record via CM/ECF and electronic mail:

Benjamin Gubernick
Curtis R. Waldo
ben@wglawllp.com
curtis@wglawllp.com
*Attorneys for Plaintiff*

HALEY R. GRANT